.THE BOARD OF SUPERVISORS OF RENSSELAER COUNTY *vs.*
WEED and others.

A committee of a board of supervisors has no power to draw a draft upon the
county treasurer.

An order for the payment of money to contractors, for furnishing and supply-
ing the county house, drawn upon the county treasurer, by a committee of
the board of supervisors, in pursuance of a resolution of the board, is not
a *draft*, in the sense of being commercial paper; and the taker of it is
bound—like the taker of a chose in action not negotiable—by all the
equities to which it was liable in the hands of the person transferring it
to him.

THIS was an action upon the official bond of Henry E.
Weed, treasurer of the county of Rensselaer, to recover
an alleged balance of public moneys. The action was tried at
the Rensselaer circuit, in June, 1860, before Justice HOGE-
BOOM, without a jury. The justice found the following facts,
to wit: That the defendant Henry E. Weed was duly ap-
pointed treasurer of the county of Rensselaer, on the 25th
day of February, 1857, in place of Myron Hamblin, late
county treasurer, deceased, and, with the other defendants
herein, executed the bond mentioned and set forth in the com-
plaint, at the time therein mentioned, and that said Weed
continued in office until the first day of January, 1858; that
as such county treasurer, he received and paid out large sums
of money belonging to the county of Rensselaer; that on
the 26th day of December, 1857, a committee of the board
of supervisors, consisting of Alexander G. Halsted and Fran-
cis N. Mann, who had been previously appointed by said
board for that purpose, examined the accounts and vouchers
of the said county treasurer, and found said books balanced
by him, except as to the sum of $146.56 due from said county
treasurer, which sum was paid by him before the commence-
ment of this action; that said committee ascertained the
amount of county money received by the treasurer, from his
books; that upon said books said treasurer had credited him-
self with the payment of $1583.19, for and on account of

Supervisors of Rensselaer County *v.* Weed.

draft drawn January, 24th, 1857, by a duly appointed and authorized committee of the house of industry of said county, on Myron Hamblin, county treasurer, which said draft is as follows, viz:

"Troy, Jan. 24th, 1857.

Myron Hamblin, county treasurer :

Please pay to the order of Messrs. Gregory & Smith, contractors, for furnishing and supplying the county house, fifteen hundred and fifty-one $\frac{50}{100}$ dollars, as per resolution passed by board of supervisors Jan. 12th, 1857.

C. L. RICHARDS,

A. MARSHALL,

JOHN J. SLITER,

RINDER M. DEFREEST,

*Committee house of industry for* 1857.

[*Indorsed*,] Gregory & Smith, James T. Main."

Which said draft, after the execution thereof, came into the possession of Justus E. Gregory, one of said firm named as payees therein, and had never been in the manual possession of Sidney D. Smith, the other of said payees ; that said committee determined that the payment of said draft by the defendant Weed, as county treasurer, was unauthorized, and repudiated and disallowed said credit, and thereupon reported to said board accordingly, and their report was adopted by said board of supervisors ; that at the time of the delivery of said order to Gregory & Smith, or one of them, they were indebted to said Myron Hamblin, county treasurer, in the sum of $1582.50 for advances by said Hamblin, made to them and received by said Smith, on account of their next quarterly claim and payment, due to them by the county of Rensselaer, for which said quarterly payment said draft was given ; that at the time of the delivery of said draft the said Smith had received from the said Myron Hamblin the sums of money, and at the times stated in the following receipts :

" This is to certify that Myron Hamblin has advanced eleven hundred and seventeen $\frac{50}{100}$ dollars ($1117.50) to us

on our contract with the board of supervisors of Rensselaer county, for furnishing and supplying the house of industry, or county house; and we hereby authorize the said Myron Hamblin, as treasurer of the county, to retain the above mentioned amount from the quarterly payments due January 15th, 1857. Dated Troy, Oct. 17th, 1856.

GREGORY & SMITH."

The other paper was as follows, viz:

" This is to certify that Myron Hamblin has advanced four hundred and sixty-five dollars ($465) to us on our contract with the county of Rensselaer, or board of supervisors, for furnishing and supplying the house of industry, or county house; and we hereby authorize the said Myron Hamblin, as treasurer of the county, to retain the above mentioned amount from the quarterly payment due January 15th, 1857.

Dated Troy, Oct. 18, 1856. S. D. SMITH."

That the said Gregory did not direct or authorize Smith to demand or receive either of the sums of money mentioned in the said receipts, or to demand or receive any money which might become due upon the contract therein referred to; that all of said money was received by said Smith without the knowledge or approbation of said Gregory; that Gregory was never, so far as the evidence shows, informed thereof until after the execution and delivery to him of said draft. Hamblin never credited himself on the treasurer's books with the disbursement of said money, or any part thereof. After his death, it was credited in his account by direction of his administratrix; that on the 27th day of November, 1856, Smith, by writing, sold and transferred to Gregory his interest in the claim of Gregory & Smith against the county, to accrue, under said contract, on the 15th day of January, 1857, and at that time Smith represented to Gregory that there were no claims against Gregory & Smith not known to Gregory, except to the county, upon an advance made at the time of the execution of said contract with the county; that at the time of said assignment, Smith also gave to Gregory

an order on the said Hamblin, as treasurer, which, three days after, was presented by Gregory to Hamblin; that Hamblin then said to Gregory that he had done right in taking said transfer; that on the presentation of said draft to Hamblin by Gregory, he refused to pay the same, or any part thereof, on the ground that his prior advances to them, and the agreement set forth in said receipts, was either a payment or a proper legal offset to said draft; that Gregory thereupon, several days after said order had been so presented to said Hamblin and payment refused, transferred the said order to one James T. Main, and Main transferred the same to one Roger A. Flood, but no money or other valuable consideration was paid by Main to Gregory, or Gregory & Smith, on said transfer, except that on or after said transfer, Main paid to Gregory the amount of said draft, after deducting the amount or value of one half of the personal property. Main, before receiving the draft, was notified of the claim of Hamblin in regard thereto, and was apprised thereof by Hamblin; that Gregory, after said draft had been presented to Hamblin and payment refused, (but at what particular time was not shown,) but not until after the death of Hamblin, which was in February, 1857, transferred said draft to Main; that on the 24th September, 1856, Smith, in consideration of the sum of $1000 to him paid (as receipted in the instrument of transfer) by Main, sold to him (Main) all the title and interest of him, the said Smith, to the personal property owned by Gregory & Smith, and being at and about the county house and farm thereto belonging; that the consideration of said draft, to the amount of $1469.06, was for the said property, which, after the title acquired as aforesaid by Main of Smith, one half interest therein had been sold for that amount to the county, under the terms of said contract between the county and Gregory & Smith; that Main, after the transfer of said draft to him, paid to Gregory in money the amount thereof, less one half the purchase price of said personal property due from the county; that Main, on the next day

after receiving said draft, or shortly thereafter, as to which the proof is not plain, sold and delivered the same to Roger A. Flood, in consideration of receiving from said Flood the amount thereof in money; that Main does not recollect that he did then, or at any other time previously, inform Flood of any or either of the matters aforesaid connected with said draft, but is not positive but he may have done so, or told him that the draft was objected to; nor is there any evidence that Flood had any notice or knowledge thereof before taking the same, beyond what was contained in the testimony of Main. Flood indemnified Weed before the latter paid him the draft, and was informed by Weed of the claim of Hamblin, or his estate, thereto; that Hamblin, before the said draft was transferred to Flood, and about the 23d day of February, 1857, died, and said Henry E. Weed was thereupon chosen treasurer of the county of Rensselaer as aforesaid. There is no evidence that any part of the sums or advances to Gregory & Smith, mentioned in said receipts, have been returned or repaid by them, or any one in their behalf, to said Hamblin, or his representatives or assigns, or that any part of said sum of $1583.19 of the moneys belonging to said county of Rensselaer so received by said Henry E. Weed, has been paid over or accounted for to his successor in office, or the board of supervisors of Rensselaer county; that said Henry E. Weed, at the time of and before the payment of said order, had notice and knowledge that the said order had been presented as aforesaid to said Myron Hamblin, and its payment refused by him, and that Hamblin claimed that said order was fully paid and satisfied by reason of said advances, and the execution to him of said papers and receipts. Hamblin claimed that he had an offset against said draft, and that he considered it paid by means of said advances to Smith; that at the time said draft was drawn, the said Gregory, Smith and Hamblin were before the committee who executed it; that Hamblin drew the draft, and then presented the receipt to a portion of said committee, who refused to do any

thing concerning them, alleging that their duty was to make the draft in favor of Gregory & Smith, leaving them to arrange their own matters with Hamblin; that two of said committee heard nothing concerning them; that the committee examined the accounts, determined the amount of credit and drew said draft, entirely disregarding said receipts, and without charging against Gregory & Smith the moneys so advanced by Hamblin as aforesaid, for the reason above mentioned; that the defendant Weed, before paying said draft, consulted with the committee, who drew the same, and he also consulted with counsel, and said counsel advised them that the draft should be paid if in the hands of a bona fide holder, and he subsequently paid it to Flood, having received from him a bond of indemnity; that subsequently thereto, to wit, on the 8th day of May, 1857, Flood presented said order to said Henry E. Weed, county treasurer as aforesaid, for payment, and the same was thereupon paid by him to said Flood, and credited by him to himself on the books of said treasurer, and said payment disallowed by said committee of the board of supervisors appointed to examine his accounts as aforesaid.

From the facts so found, the judge found, as conclusions of law, 1st. That said advances so made by Hamblin, and the receipts so given by Gregory & Smith to him, justified Hamblin in refusing payment of said order to Gregory and Main, and that the same was paid and discharged in the hands of said Gregory & Smith, or was not available to them as against Hamblin before assignment to Main. 2d. That Weed having notice of the rights and equities of Hamblin, or his estate, had no right to pay said order out of moneys belonging to the county of Rensselaer, to Roger A. Flood. And therefore, that the plaintiffs were entitled to recover the amount of such payment and deficit in the accounts of said Henry E. Weed. He therefore decided that the plaintiffs were entitled to recover, and that the defendants pay the

plaintiffs the sum of $1583.19, with interest thereon from the 8th day of May, 1857.

The defendants appealed from the judgment.

*W. A. Beach,* for the appellants.

*G. Van Santvoord,* for the respondent.

*By the Court,* GOULD, J. It was held in *The Chemung Canal Bank* v. *The Board of Supervisors of Chemung County,* (5 *Denio,* 517, 523, 4,) that a board of supervisors cannot draw bills of exchange; but can merely certify the evidence of the audit, or resolution, of the board. Of course a committee of the board cannot do what the board could not.

This, therefore, is no *draft,* in the sense of being commercial paper; and the taker of it is bound, (like the taker of a chose in action not negotiable,) by all the equities to which it was liable in the hands of the person transferring it to him.

In this case Flood was bound by Main's knowledge of Hamblin's equities. This being so, there can be no doubt that the judge, at the circuit, drew the correct legal conclusions from the facts he found. And I see no way in which we can say that there is not evidence sufficient to support the findings of fact.

It would seem that the judgment of the circuit must be affirmed.

Judgment affirmed.

[ALBANY GENERAL TERM, September 2, 1861. *Wright, Gould* and *Hogeboom,* Justices.]