# E. A. Goodnow

## v.

## The Board of Commissioners of Ramsey County.

The act of the Legislature, approved May 23, 1857, (See. Laws Ex. Sess. 301) authorizing the County Commissioners of Ramsey County to "issue County orders to the persons named, for the amounts severally due them, subject to the same rules as other County orders issued by said County Commissioners," gave them no authority to issue bonds payable at a future day with interest coupons attached.

The plaintiff was bound to take notice of the statute under which the Commissioners acted, and is presumed to have known the extent of their power.

County Commissioners have not, in our State, generally the power to make bonds or negotiable paper of any kind, the consideration or validity of which may not be inquired into in the hands of any person as well before as after maturity.

The publication for three weeks of the notice required by sec. 3 of the act above cited was a condition precedent, without the performance of which the Commissioners had no authority to appropriate or condemn the land over which the road was laid.

This action was brought in the District Court for Ramsey County, to recover the amount of certain interest warrants or coupons, which were attached to certain bonds issued by the Board of County Commissioners of said county to Jay Briggs & Co., for grading and constructing a certain public street or road, as an extension of Fort Street, in the city of Saint Paul, in said county, and assigned and transferred to plaintiff before maturity.

This extension was constructed under a special act of the legislative assembly, entitled " a bill relative to an improve-

Goodnow v. Commissioners of Ramsey County.

ment in the city of Saint Paul," approved May 23, 1857, and an act supplemental thereto. This act, after providing for the appointment of commissioners, and for their fixing and determining the route and causing a plat and survey to be made and deposited in the office of the Register of Deeds for said county, &c., in the third section provides as follows: " They (the commissioners) shall thereupon cause a notice to be published once in each week for at least three weeks in two of the newspapers published in said county, that said plat has been deposited as aforesaid, and that they will meet at a time and place therein specified to ascertain and assess the damages and recompense to be paid to the owners of land required to be taken as aforesaid, and at the same time to determine what property will be benefited or injured by such improvement, and assess the damages and expenses thereof on the real estate of persons benefited." The 13th section of said act provides among other things, that said road commissioners shall make a report to the county commissioners of said county, of the amount due upon any contract or contracts in relation to the opening and grading of said street or road, and the person or persons to whom the same is due, and concludes as follows: " The county commissioners shall thereupon issue county orders to the person or persons in such report named, for the amounts severally due them, and subject to the same rules as other county orders issued by said county commissioners."

The complaint sets out at length the proceedings had under said act, for the laying out, grading and opening of said street or road to its final completion, but fails to allege that the notice required by section three of said act was published once in each week *for three weeks* in two of the newspapers published in said county. It alleges that said Jay Briggs & Co., were the contractors who graded and constructed said road or street, and that said street commissioners made the report required by sec. 13, reporting the amount due said Jay Briggs & Co., upon their said contract, but that the County

commissioners of said county refused to pay this amount, and proposed to pay a less amount in the bonds of said county, provided said Jay Briggs & Co. would accept the same in full payment; that Jay Briggs & Co. accepted said proposition, and the bonds were issued, payable in 1869, with interest coupons attached, including the bonds, the coupons of which are the subject of this action; that prior to the issuing of said bonds and ever since, said street or road has been used and recognized as a public street and highway. That said Board of County Commissioners for said county did and do in their public official records and proceedings, admit, recognize and represent to the public, the validity of the establishment of said road, of the contract with said Jay Briggs & Co., and of said bonds; that said bonds were issued instead of orders, because it was considered by the said county board more advantageous to the county; that said Jay Briggs & Co. received said bonds relying upon such representations and recognition, believing them to be good and valid. That the bonds whose coupons are in suit were sold, transferred and delivered to the plaintiff for their par value consideration, and that he believed that they were valid.

To this complaint the defendant demurred, upon the ground that the same did not state facts sufficient to constitute a cause of action. The demurrer was overruled by the court. The defendant appeals from the order overruling the same to this court.

H. J. Horn, for appellant.

First—The bonds and interest warrants in question were issued without authority.

The act relative to the improvement in question provides *in what manner* the said work shall be paid for, to-wit:

" Sec. 13. After the order of the district judge shall be filed and recorded as aforesaid, the said commissioners shall

proceed to make, open, and grade the said road from the limits of said city to said ferry, and upon the completion thereof shall make a report of their proceedings in relation thereto to the Board of County Commissioners of said county, showing the costs and expenses thereof, any contracts made by said commissioners for the doing of said work, the amount due upon such contract or contracts, and the person or persons to whom the same shall be payable by virtue of any such contract. The county commissioners shall thereupon issue *county orders* to the person or persons in such report named for the amount severally due them, and subject to the same rules as other county orders issued by said county commissioners." Act of May 23, 1857; Session Laws 1857, Extra Session, p. 301.

This is the only authority vested in the county to make payment for the grading of the road, and such payment is required to be made in *county orders*. No authority is given the county to issue bonds, much less interest warrants for this purpose.

The law is well settled, that where a municipal corporation is empowered to perform an act, but required to perform such act in a *particular manner* prescribed, *the mode or manner prescribed* must be followed, or otherwise the act is void. *Brady v. Mayor of New York*, 2d Bosworth, p. 173; 20 New York, p. 312; *Bonsteel v. Mayor of New York*, 22 N. Y. p. 162. Also general doctrine in *Farmers' Loan and Trust Co. v. Cranch*, 5 Barb. 649; *Head & Armory v. Providence Insurance Co.*, 2 Cranch, p. 127; *The Bank of Augusta v. Eash*, 13 Peters, 519, 587; *Thomas v. Schemerhorn*, 2 Seld. 92.

The Supreme Court of this State has steadily held the same doctrine.

Thus, where the charter of the city of St. Paul authorized the corporation to contract for street grading, but required the work to be let to the lowest bidder after giving due notice,

it was held that unless the work was let *in this manner*, the contract would be void. *Nash v. The City of St. Paul*, 8th Minn. p. 187.

And so where a road was constructed under a special act, which provided that a statement of the expense, &c., should be filed with the proper boards of county commissioners, and that orders were to be drawn on the treasurers of the proper counties for the amounts required to be paid by such counties for the work, it was held that orders drawn prior to the filing of such statements were void. *Thorne v. Washington Co.*, 7 *Minn.*, 150.

A corporation which is confined in its expenditures to a particular fund, may not create a debt or borrow money beyond such fund without express authority. *Regents of the University of the State of Minnesota v. Hart*, 7 Minn. 73.

There is an obvious and substantial difference in county orders, and bonds drawing interest, and payable at a future time.

The county orders do not draw interest nor entail a permanent debt on the county, as they are receivable at all times in payment of taxes, and are to be paid, as there are funds in the treasury, in the order of presentation. Sec. 42, chap. 7, Stats. of Minn. 160.

By issuing bonds the county might place it out of its power to pay the debt for fifty years, which the statute evidently intended should be discharged as speedily as practicable. The county is also obligated by such bonds to pay *interest*, which would be avoided by issuing orders.

In the present case the claim is really for *interest*, the suit being brought upon interest warrants, or coupons attached to the bonds.

If the work had been paid for in *orders*, therefore this claim for *interest* would not exist.

That the act intends that this particular mode of payment must be pursued, is plain from its phraseology ; the language

is *county orders*, a species of security, or evidence of debt, well understood. The act also provides that these county orders shall be "subject to the *same rules as other county orders* issued by said county commissioners," that is to say, receivable in taxes, &c. See case of *School District v. Thompson*, 5 Minn. 287.

"Though the giving a note to pay a debt of the district *in futuro*, might seem to the district or trustees most convenient, the Legislature has not thought fit to grant authority for such purpose." Ibid, p. 287.

If the act of issuing the bonds was void, any attempted ratification by the county commissioners would be equally void.

"If the corporation had no power to make, it of course could not ratify or confirm such a contract so as to become liable thereon." *Nash v. City of St. Paul*, 8 Minn. 181; *Brady v. Mayor of New York*, 2 Bosworth, 173; 20 New York, 312.

So far from there being any legislative confirmation of these bonds, the Legislature passed an act shortly after their issue, declaring, in effect, that these bonds were "illegally issued," and authorizing the county commissioners, in their discretion, to take up these illegal bonds at the rate of not over sixty per cent. upon the dollar. Sec. 11, Act of March 12, 1861, Laws of 1861, p. 259.

This act seems to treat the entire proceeding under the former act as a nullity (except as to laying out and platting the road,) and directs a new assessment of damages, &c.

Second—It does not appear that the commissioners appointed to open the street gave the proper notice to the property owners, for which reason it is claimed that their proceeding was utterly void, and that they had no authority to contract for the grading.

Sec. 3 of the act of May 23, 1857, provides that—

Goodnow v. Commissioners of Ramsey County.

" They shall thereupon cause a notice to be published once in each week, for at least three weeks, in two newspapers published in said county, that said plat has been deposited as aforesaid, and that they will meet at a time and place therein specified, to ascertain and assess the damages and recompense to be paid to the owners of lands required to be taken as aforesaid, and, at the same time, to determine what property will be benefited or injured by such improvement, and assess the damages and expenses thereof on the real estate of persons benefited." Laws of 1857, Extra Session, p. 399.

This notice might be considered in the nature of the summons or citation to the parties interested ; it was, undoubtedly, a most essential step in the procedings, and its omission would render the act of the commissioners void for want of jurisdiction. See *Ullman v. Lion*, 8 Minn. p. 381 ; *Thorne v. Washington Co.*, 7 Minn. 150.

The title to the land required for the road never became public property by reason of this defect, and the commissioners had no right to grade it, or contract for its grading, nor was the county liable to pay for it.

The act of March 12, 1861, was passed undoubtedly in view of the illegality of this proceedure, and requires the proceeding to commence *de novo.* Laws of 1861, p. 298, &c.

J. V. D. Heard, for respondent.

A county has the inherent power to incur a debt for a legitimate county purpose, and to issue evidences of such debt, including bonds and promissory notes.

" A corporation, without any express power in its charter for that purpose, may make a negotiable promissory note or bill of exchange when not prohibited by law from doing so, provided such note or bill of exchange be given for a debt contracted in the course of its legitimate business." *Halstead v. The Mayor, &c., of the City of New York*, 5 Barbour, 224 ;

*Chaska Co., v. The Board of Supervisors of Carver Co.,* 6 Minnesota Reports, 218.

The improvement of the road in question was a legitimate county expense, in the absence of the special act referred to. Sec. 5, p. 153, Pub. Stats.

The special act providing for the issuance of county orders therefor, directly makes the road a county expense.

The commissioners were not confined to the issuance of county orders for the work. County orders are a mere means for drawing money out of the county treasury, and do not constitute a payment. The section of the law upon this subject was not inserted therein for the purpose of setting aside any particular fund for the payment of the improvement, but was so inserted for the purpose of having the performers of the work promptly paid. It was for the benefit not of the county, but of the contractors. It was the intention of the Legislature by the law to compel the road to be built promptly at the county expense, which road the county had before the power but not the inclination to build. If the contractors chose to waive this benefit, and give the county a postponement of payment, the county should not be allowed to object. The bonds were simply evidence of a prolongation of the time of payment, virtually *county orders on time.*

If the county had issued its orders for this debt, it could have issued bonds to raise money to pay them, or issue bonds to take up the orders; and it certainly should be allowed to do directly what it could so do indirectly. Sec. 38, p. 159, Pub. Stats. ; 5 Iowa, 380, 383.

Again, the county had a right to issue these bonds as a compromise of a disputed claim, and the complaint alleges that they were so issued.

The consideration of the bonds being an equitable one, as to the county, the county cannot dispute the legality of the establishment of the road, nor inquire into proceedings to which it was a stranger. 8 Cowen, 543, 555, 578, 579; 16

Pick. 87, 88, 96, 97; 2 Hill, 522; 2 Hill, 525; 6 Wendell, 213; 7 Metcalf, 409; 8 Paige Ch. R. 639; 5 Coke, 119; Bullers Nisi Prius, 224.

There is scarcely a legally laid out road in this State, and yet the public has properly paid for their improvement.

The county is *estopped* from such inquiry by its representations that such proceedings were legal, and the bonds are commercial paper, not liable to such a defense in the hands of the plaintiff. *Moran v. Commissioners of Miami Co.*, 2 Black's U. S. Repts. 722; *Clapp v. County of Cedar*, 5 Iowa, 54.

The Legislature made the filing and recording of the judge's order as to the report conclusive upon the commissioners, and did not authorize them, in making payment for the work, to look beyond it.

*By the Court*—WILSON, CH. J.—The complaint in this action does not state facts sufficient to constitute a cause of action. The act of the Legislature authorizing the county commissioners of Ramsey County to "issue county orders to the persons named, for the amounts severally due them, subject to the same rules as other county orders issued by said county commissioners," gave them no authority to issue bonds payable at a future day, with interest coupons attached. Such statutory power must be strictly construed. County orders are in legal effect, as well as in form, essentially different from such bonds, and whether the issuing of the bonds instead of county orders was advantageous to the county, was a question solely for the decision of the Legislature, and neither the courts, nor the county commissioners, had the right to question, or power to contravene that decision.

What the county commissioners represented, or the plaintiff or his grantors believed, as to the validity of these bonds, cannot affect the rights of the parties in this case. No representation of the agent, as to the fact of his agency, or as

to the extent of his power, is of any force to charge the principal.

The plaintiff was bound to take notice of the statute under which the commissioners acted, and is therefore presumed to have known the extent of their power. His erroneous view of the law cannot help him, or prejudice the county. *Gould v. Sterling*, 23 N. Y. 463–4 ; *Bessell v. Michigan S. & N. Ind. R. R. Co.*, 22 N. Y. 289–309. But it is insisted that the improvement of the road in question was a legitimate county expense in the absence of the special act above refered to, and that therefore the county commissioners had the power to incur a debt for that purpose, and to issue evidences of such debt, including bonds and promissory notes.

If this was admitted, we think it would not help the plaintiff's case, for whatever the power of the county commissioners may be generally, the special act above refered to was made the rule of their conduct in this case, and it is manifest from the complaint that they acted in the premises only in obedience to the mandate of said act. Nor can the claim of the plaintiff that he is a *bona fide* holder for value avail him. We think the position cannot be sustained, that counties in our State have generally the power to make such bonds or negotiable paper of any kind, the consideration or validity of which cannot be inquired into in the hands of any person. Corporations are the mere creatures of law, established for special purposes, and deriving *all* their powers from the acts creating them. The corporate acts must not only be authorized by the charter, but these acts must be done by such officers or agents and in *such manner* as the charter authorizes. 2 Kent's Com. 299 and cases cited and note ; *Bard v. Chamberlain*, 3 Sandf. Ch. 32; *Broughton v. Manchester Water Works*, 3 Barn. & Ald, 11 ; *McSpeden v. Mayor, &c.*, 7 Bosw. 601 ; *Perine v. Ches. & Del. Canal Co.*, 9 How. U. S. R. 172, 184 ; *McCullough v. Moss*, 5 Denio, 566; *Williams v. Lash*, 8 Minn. 496; *Braily v. Mayor of N. Y.*, 20 N. Y. Rep. 312 ; Angell &

Ames on Corp. sec. 111, ib. 271; *School Dist. v. Thompson*, 5 Minn. 257.

And we may here add, that counties, like towns and school districts, are mere *quasi* corporations, invested with corporate powers *sub modo*, and for a few specified purposes only, but deficient in many of the powers incident to the general character of corporations. *Fourth School Dist. v. Wood*, 13 Mass. 194; *School Dist. v. Thompson*, 5 Minn. 286; 2 Kent's Com. 278; Angell & Ames on Corp. sec. 23. Sec. 13, page 59, Rev. Statutes, reads as follows: "The several boards of county commissioners are authorized and required (1) to provide for the erection and repairing court houses, jails, and other necessary public buildings for the use of the county, (but no tax shall be assessed or any debt created for the erection of court houses or jails by said board, without being first authorized so to do by a vote of the electors of the county,) (2) to lay out, alter or discontinue county roads and highways within their respective counties, and to do all other necessary acts relating thereto, (3) to license ferries and fix the rates of ferriage; to grant grocery and other licenses authorized by law to be by them granted, (4) to fix the amount of taxes to be assessed according to the provisions of the law, and cause the same to be levied and collected, (5) to examine and settle all accounts of the receipts and expenditures of the county, (6) to have the care of the county property, and the management of the county funds and business, except in cases otherwise provided for, and shall have no other powers except such as are or may be given by law." Sec. 95, page 111, Rev. Statutes, points out the mode of raising a revenue for county purposes, and sec. 4, page 64, ib., provides that the county treasurer shall receive all moneys due and accruing to the county, and pay and disburse the same on orders drawn by the county commissioners, "*and not otherwise.*" Sec. 9 of the same chapter, provides for the payment of judgments against the county, but no provision is found for the payment of

bonds of this kind, or mercantile paper of any kind.    If the power to make such paper exists, as we have above seen, it must be conferred by statute, and we in vain look in the statute for the grant of any such power to the commissioners. The powers of the commissioners are defined, and the means to be used in the performance of the duties imposed designated, by the statute.    The specification of such means would seem to imply a prohibition of any other.    Had it been intended to authorize the commissioners to make such paper, the county treasurer would certainly have been authorized to pay it.    But it is said that it is sometimes necessary to raise money for purposes not anticipated or provided for by a previous tax, and that such money must be borrowed, and negotiable securities given therefor.    We think the statutory provisions above cited, construed fairly and according to the settled rules of interpretation, clearly negative the existence of such power, and the necessity of the case, how great so ever it might seem to be, could not confer the power.    But the necessity urged is more imaginary than real.    It is not claimed that the commissioners cannot act until the money is in the treasury to pay the obligations incurred.    The statute contemplates such a contingency, and provides that county orders may be issued before funds are in the treasury to pay them, (sec. 8, page 651, Rev. Stat.,) and practically, no difficulty is experienced in this respect. Nor is it denied but that the commissioners may contract debts for the payment of which the county would be liable, and their admissions, whether in writing or parol, would be evidence of such debt; but if in the form of bonds or promissory notes, they would be merely written evidences or admissions of debt, having none of the attributes of negotiable paper, and subject to be impeached for want of consideration in the hands of any person.    We do not here pretend to decide whether the county can, without express authority, borrow money; that question is not involved in this case.

The same arguments drawn from convenience and supposed necessity that would extend these powers to counties, would also extend them to towns, school districts and other *quasi* corporations. In the case of *School Dist. No. 7 v. Thompson*, this court held that a school district could not make a promissory note. In New York each town is a body corporate, having capacity to sue and be sued, and " to purchase and hold lands within its own limits for the use of its inhabitants ; to make such contracts, and to purchase and hold such personal property as may be necessary to the exercise of its corporate or administrative powers, &c." It is also further provided, that "no town shall possess or exercise any corporate powers except such as are enumerated, or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or given." From the powers conferred on said towns, the power to borrow money and make bonds and notes may as naturally be inferred as from the powers conferred on counties under our law; but in New York the court of appeals have held that the towns of that State "have not the general power to borrow money, nor are their officers, in the *exercise* of their ordinary duties, authorized to issue bonds, or any other evidences of indebtedness, in the name of the towns represented by them, for loans or other debts contracted or incurred on their behalf; such power must be specially conferred by a grant of the Legislature." *Storm v. Town of Geneva*, 23 N. Y. 449 ; *Gould v. Town of Sterling*, *ib*. 456.

It would seem to be the law of that State that the county supervisors cannot make negotiable paper. *Chemung Canal Bk. v. Supervisors of Chemung Co.*, 5 Denio, 517 ; *Supervisors of Reno Co. v. Weed*, 35 Barb. 136.

The decisions in New York, and we believe in the other States, that corporations may make promissory notes without any special authority, are based on one of two grounds : (1) that the power is implied as the usual and proper means to

accomplish the purposes of the charter, or (2) that corporations are mentioned in the Statute of Anne (6 Anne, 32) as "persons" who *may* make or indorse notes, and are also included in the statutes of the State which provide that all "persons" may, &c.

This reasoning cannot apply to *quasi* corporations in our State, for we have seen that this is not the usual or authorized means to accomplish the objects of the enabling acts, and our statute as to promissory notes, if held to apply to them, would authorize them to draw bills or make notes payable outside of the limits of the State or United States. That this could not be within the scope of the powers of such *quasi* corporations, is too plain to admit of argument.

. We conclude, therefore, that county commissioners have no power to bind their counties by written instruments, the consideration of which cannot be impeached either before or after maturity in the hands of *any* person. The plaintiff therefore took these bonds subject to any legal or equitable defense the county might have ; and even if we admit that the commissioners issued them under their general power, and not under the special law above referred to, the plaintiff cannot recover.

The complaint does not show that the road, for the making of which the bonds were issued, was legally established, or that any title was acquired to the lands over which it was laid. Sec. 3 of the act under which the commissioners proceeded, required them to cause a notice to be published once in each week, "*for at least three weeks*," of the assessment of damages. No such notice is alleged to have been given. This was a condition precedent, without the performance of which they had no authority to appropriate or condemn the land over which the road was laid.

The order overruling the demurrer to the complaint is reversed, and the cause is remanded.