## Case No. 12,794.

### SHIRK v. PULASKI COUNTY.

[4 Dill. 209; [1] 4 Cent. Law J. 390.]

Circuit Court, E. D. Arkansas. April, 1877.

COUNTIES — COUNTY WARRANTS — DEFENCES — RIGHTS OF HOLDER.

1. Warrants issued by counties in Arkansas are not commercial paper, free from legal and equitable defences in the hands of a subsequent holder, but such holder takes them subject to such defences.

[Cited in Goldman v. Conway Co.. 10 Fed. 889.]

[Cited in Board of Sup'rs v. Catlett's Ex'rs (Va.) 9 S. E. 1001.]

2. Under the laws of Arkansas, warrants issued for more than the sum actually due a claimant in order to make the warrant worth in money the amount of the debt due from the county, are void as to the excess, and may be defended against accordingly. The act of the county authorities, in auditing the claim and issuing the warrants, is not conclusive, as a judicial determination, upon the parties.

[Cited in Board of Com'rs of Hamilton Co. v. Sherwood, 11 C. C. A. 507, 64 Fed. 107.]

3. Under the circumstances, the court treated the holders of such warrants as the equitable assignees of the valid legal claim of the payee, or of the holder's proportionate share of such claim where several warrants were issued therefor, subject to any payments the county may have made to any holder of a warrant representing a portion of such claim.

[Cited in Wood v. Louisiana, Case No. 17,948; Gause v. Clarksville, 1 Fed. 357; Thompson v. Searcy Co.. 6 C. C. A. 674. 57 Fed. 1033.]

4. The statutes of Arkansas, as to calling in warrants "in order to cancel, reissue, and classify the same," construed.

At law.

Kimball & Rose, for plaintiff.

Mr. Brown, for defendant.

Before DILLON. Circuit Judge. and CALDWELL, District Judge.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

DILLON, Circuit Judge. This is an action upon a great number of county warrants, issued at various times, and of various classes, by the defendant county. Some of these are warrants that were rejected by the county court, under the "calling-in" order of April 19th, 1875; some are warrants which were not presented under that order; some are warrants presented under that order, and reissued by the county court; and some of the warrants rejected, and some of the warrants reissued under that order, are what is popularly known as "five-to-one" or "ten-to-one" warrants. Upon consideration of the demurrer to the answer, which has been fully and ably argued on both sides, the court rules the following propositions:

1. That the order of April 19th, 1875, made under the act of February 27th, 1875 (Laws 1875, p. 189), requiring all outstanding warrants and scrip issued by the defendant county prior to October 30th, 1874, to be presented to the county court on or before the 30th day of July, 1875, "in order to cancel, reissue, and classify" the same, was unauthorized and void. Following the decision of the supreme court of the state in Parsel v. Barnes, 25 Ark. 261, the act of February 27th, 1875, above referred to, can only operate on warrants issued after that act went into effect. The general law on this subject (Gantt, Dig. Laws Ark. § 614) prohibits such "calling-in" orders oftener than once in three years. It is admitted on the record that there was a previous call by the defendant, in July, 1873, requiring warrants to be presented by the 1st day of October, 1873, and the above mentioned order of April 19th, 1875, was within that period. For these reasons, we hold that the order of April 19th, 1875, was beyond the authority of the county court, and void. We feel more assured of the correctness of this conclusion, since the counsel for both parties conceded that this was the true view; at all events, it was not seriously controverted by the learned counsel for the county.

2. It results as a corollary from the foregoing proposition that the legal rights of the holders of county warrants issued prior to October 30th, 1874, were in no manner affected by the order of April 19th, 1875. All action under it by the county court was coram non judice, and this irrespective of the question as to the effect of the county court not being in session on the 30th day of July, 1875, the time fixed and limited by the "calling-in" order for the presentation of the warrants. Therefore, whether the holders of warrants issued prior to October 30th, 1874, failed to present them under the order of April 19th, 1875, or presented them and they were rejected, or presented them and received reissued warrants, their rights are in no wise affected by what was done under that order. They were not bound to present them under that order; the county, by virtue of that order, had no legal power to reject

them; and the warrants reissued under that order derived no validity from the order of reissue which they did not before possess.

3. As to "five-to-one" or "ten-to-one" warrants, so-called. In many cases the county court (according to the answer, which is to be taken as true on the demurrer), for legal fees to county officers, the amount whereof was definitely fixed by statute, and for the support of paupers, and for work and labor in respect of matters which were county charges, issued warrants for five or ten times the legal fees of the officers, or the money or currency value of the support of the paupers, or work and labor done for the county.

The reason for this was the depreciation of warrants, and the corresponding difference between money and warrants. The statute of this state, at the time the warrants were thus issued. contained the following provisions, applicable to this question:

"Sec. 601. It shall be unlawful for any board of supervisors to allow any greater sum for any account, claim, demand, or fee-bill against the county, than the amount actually due thereon, dollar for dollar, according to the legal or ordinary compensation for services rendered. materials furnished, salaries or fees of officers, or to direct the issuance of county warrants upon such accounts, claims, demands, or fee-bills, for more than the actual amount so allowed, dollar for dollar.

"Sec. 602. Before any account, claim, demand, or fee-bill shall be allowed by any board of supervisors, said board shall require the person or persons. or their legal representatives. claiming the same to be due, to attach to said account, claim, demand, or fee-bill, an affidavit that the same is just and correct. and that no part thereof has been previously paid; that the services charged for, or materials furnished. as the case may be, were actually rendered or furnished, and that the charge made therefor does not exceed the amount allowed by law. or customary charges for similar services or materials, dollar for dollar; which account, claim, demand. or fee-bill, together with the affidavit thereto. shall be filed with the county clerk, and kept in his office for the term of ten years, and the same shall be subject to inspection by any member of the grand jury of the county, at each term of the circuit court, or by the prosecuting attorney of the circuit.

"Sec. 603. In all cases the board of supervisors shall require an itemized account of any claim presented to them for allowance, sworn to as required by the preceding section, and may in all cases require satisfactory evidence, in addition thereto, of the correctness of the account, and may examine the parties and witnesses, on oath, touching the same, and shall have power to compel the production of all books, accounts, papers, or documents. which may be necessary in the investigation of any matter coming properly before them, and within their jurisdiction.

"Sec. 604. Boards of supervisors are hereby prohibited from auditing and allowing to any officer any fee or allowance not specifically allowed such officer by law; and in no case shall constructive fees be allowed to or paid officers, by any county of this state.

"Sec. 605. Whenever any allowance shall be made by a board of supervisors, and an order therefor entered upon the records, the county clerk shall, when requested by the person in whose favor such allowance has been made, issue a warrant for the amount of such allowance, which warrant shall be in the following form." (Here follows the form of the warrant.)

It is our opinion that the effect of this legislation is to prohibit the county from issuing a warrant for any greater sum than such sum as would pay "the amount actually due" the creditor in money, "dollar for dollar;" a dollar in warrants for each one hundred cents of his demand.

It is probable that, even without such direct prohibition, the county court, unless expressly authorized, would have no such power. And so the point has been adjudged. Foster v. Coleman, 10 Cal. 278.

4. It is insisted, however, by the warrant-holder, that the auditing of claims by the county court, or by its predecessor, the board of supervisors, and the issuing of a warrant for the amount found due a claimant, is a judicial act and a judicial determination of the question of the county's liability, which is binding on both the claimant and the county, unless reversed on appeal, or set aside in some direct manner; and, as a consequence, that the liability of the county on warrants, or the consideration therefor, cannot be inquired into collaterally, or by way of defence to an action on the warrants.

The statute of this state gives the county court power "to audit, settle, and direct the payment of all just demands against the county." Gantt, Dig. § 595. The claimant may appeal from the allowance, or refusal to allow, but it has been decided that the county cannot. Chicot Co. v. Tilghman, 26 Ark. 461.

There is nothing peculiar in the legislation of Arkansas in the matter of auditing claims and issuing warrants therefor; and it has been decided in many states, and repeatedly, that such settlements have not the force of judicial judgments, which estop or conclude either the claimant or the county. Among the many cases on this subject, the following are directly in point: Webster Co. v. Taylor, 19 Iowa. 117. 120. and cases cited; Clark v. Des Moines. Id. 199; Clark v. Polk Co.. Id. 248: School Dist. Tp. v. Lombard [Case No. 12,478]; Keller v. Commissioners Leavenworth Co.. 6 Kan. 510; Goodnow v. Board Com'rs Ramsey Co.. 11 Minn. 31 [Gil. 12]; Dill. Mun. Corp. § 412. and cases cited; Mayor of Nashville v. Ray, 19 Wall. [86 U.

S.] 468, 477. Many more cases might be cited, but it is hardly necessary. The true rule is this: Within the limits of their power, as conferred by statute, the action of the county court, in determining the amount due a creditor of the county, in the absence of fraud, or, perhaps, mistake, binds the county; but the county court cannot bind the county by ordering a claim to be paid, which is not made a county charge by statute, or by allowing more than the statute distinctly limits, or by an allowance in the face of a statutory prohibition.

Any other principle would ruin municipalities and counties; and the danger which would result from it is well exemplified in this case, where ten dollars have been allowed for one, and where, it is said, the officers of the defendant county have in this manner issued $400,000 of warrants within a few years, which are yet outstanding.

5. This practice having so long obtained, and these warrants having been issued and passed freely into circulation without objection, they are, doubtless, in many cases, in the hands of parties who have received them for value in good faith. Each holder is the equitable assignee of the valid, legal claim of the payee, or of the holder's proportionate share of such claim, where several warrants have been issued therefor, subject to any payments the county may have made to any holder of a warrant representing a portion of such claim.

We have some doubt as to whether the holder of these "five-to-one" or "ten-to-one" warrants can recover on them even thus far, but, under the circumstances, we see no injustice which a recovery to this extent, and subject to these limitations, can work to the county; and it is but just to the present holders of the warrants, who may have taken them in good faith and for value—a result which would have been avoided if the county or the people had promptly stopped, as they ought, this bad business. Wherever the original claimant could have recovered against the county, there is no inconsistency in subrogating the holder of warrants issued for such a claim to the rights of the payee. And such a principle was in reality adopted in School Dist. Tp. v. Lombard [supra], by Mr. Justice Miller, for there is no substantial difference in the rights of the parties, whether the county files a bill in equity to cancel a warrant for illegality, or is allowed for that reason to make a defence thereto.

A judgment on the demurrer to the answer will be entered, in conformity with these views. Judgment accordingly.

NOTE. The circuit court of the United States for the Eastern district of Arkansas, April term, 1876, upon a review of the legislation of that state touching the indebtedness of counties on warrants, and the provisions of the new constitution on the subject of county indebtedness, decided the following propositions:

1. That the county court, in case the county is indebted, owes a legal duty to the creditor, or warrant-holder, to exert the power of levying taxes to the maximum limit allowed by law, if necessary, to pay the outstanding indebtedness of the county. The maximum rate can in no event be exceeded. Dill. Mun. Corp. § 689.

2. That a creditor, who has obtained a judgment in this court against a county, may, after proper demand on the county court to discharge its duty in this regard, and a neglect or refusal on the part of the court to comply with such demand, have a mandamus to compel the performance of such duty. There must be such a demand, or averment of facts of such a nature as will dispense with the demand.

3. Under the new constitution (article 16, § 9), as to indebtedness then existing, there is a duty, which creditors may enforce, resting on the county court, to levy a tax, not exceeding one-half of one per cent. Such tax, when levied and collected, cannot "be used for any other purpose" than the payment of such indebtedness (article 16, § 11), and must, according to our present impression, although the court does not hold itself concluded on the point, be collected in money, and not in other warrants. See U. S. v. Miller County [Case No. 15,776].