## LUTHER Z. ROGERS *vs.* LE SUEUR COUNTY *et al.*

(Submitted on briefs June 1, 1894. Affirmed June 11, 1894.)

No. 8822.

**Power of a county to incur debts.**

1878 G. S. ch. 8. §§ 85, 86 and ch. 11, §§ 49, 114, construed. *Held,* the board of county commissioners has no power to incur liability for the county, which, with the ordinary current yearly expenses and other liabilities payable within a year, will exceed both the amount of funds in the county treasury and the maximum amount which can be assessed as one year's taxes for county purposes according to the tax lists on file when the contract is made under which the liability will be incurred.

**Anticipating uncollected taxes.**

*Held,* further, the board cannot, in addition to anticipating the above resources, in incurring liability, also anticipate uncollected taxes. It has no power to anticipate in a year more than a year's uncollected taxes assessed at the maximum rate.

**Same—qualification.**

*Held,* further, it is not intended by this to hold that taxes assessed during the previous year for a specific purpose cannot be applied to that purpose during the present year before they are collected.

**Bonds to build courthouse.**

*Held,* further, under the general laws of this state the board has no power to issue bonds for the erection of a courthouse.

Appeal by the defendants, the Board of County Commissioners of the County of Le Sueur, O. H. Chapman, Chairman, and Michael Keogh, County Auditor, from an order of the District Court of Le Sueur County, *Frances Cadwell,* J., made March 13, 1894, refusing to dissolve an injunction.

The plaintiff, Luther Z. Rogers, filed his complaint February 13, 1894, stating that he is a citizen and taxpayer of Le Sueur County, that the taxable property in that county is $4,446,310, that on July 20, 1893, the board of county commissioners resolved to build a new courthouse at a cost of $40,000 and to issue and sell negotiable bonds for that amount to pay the expense and are now about to contract for its construction and to involve the county in debt and to pledge the credit of the county for that sum and unlawfully increase the rate of taxation; that the previous indebtedness of the county over

and above money in the treasury is $7,000, that the board in July, 1893, levied on the taxable property $18,000 to pay current expenses for the fiscal year, all of which will be required for that purpose. He prayed that defendants be enjoined from building such new courthouse and from making any contract therefor and from pledging the credit of the county for such purpose and from executing and selling the bonds of the county and from levying a tax for any and all county purposes in excess of five mills upon the dollar of assessed valuation of the taxable property therein. On this complaint and affidavits in support thereof the plaintiff obtained an order for and sued out a temporary injunction restraining defendants from issuing such bonds and from making or incurring any indebtedness for a new courthouse until the further order of the court in the premises.

The defendants answered that they were about to issue courthouse bonds for $40,000 payable between January 1, 1895, and 1914, with interest semiannually at the rate of five per cent per annum; that on January 1, 1894, the indebtedness of the county was $4,167.36, that in addition thereto there were ditch contracts outstanding to the amount of $2,136, and that since January 1, bills had been allowed and warrants issued for $2,074.61 more. They further answered that the resources of the county on January 1, 1894, were as follows, viz: County revenue, current and delinquent taxes uncollected, $20,640.60; Courthouse fund uncollected, $3,124.80; County ditch liens and interest, $7,580.43; Available cash in treasury, $1,663.22; Making total assets, $33,011.05. They further set forth at considerable length the present inconvenience and showed the pressing necessity for a new courthouse.

On this answer and supporting affidavits the defendants moved the court to dissolve the temporary injunction. After argument the court modified the injunction so as to permit the board to make in the year 1894 any contract which would not involve the county in any pecuniary liability in excess of $7,355.35, but in proceeding to erect a courthouse the board were restrained from making in any year any contract whereby a liability on the part of the county would be incurred which would render it necessary, to meet the same and the current expenses of the county, to levy a tax in excess of five mills on the dollar.

In a note filed with the order the court said, the board has the power and it is its duty to provide a suitable courthouse. 1878 G. S. ch. 8, §§ 85, 86, 110. But it has no power to borrow money and issue bonds therefor or to make any contract during any year whereby it will be necessary, in order to pay the debt so incurred and meet the current expenses of the county, to levy a tax in excess of five mills on the dollar. 1878 G. S. ch. 11, § 114. *Chaska Co.* v. *Carver Co.*, 6 Minn. 204, was decided prior to this statute. The present rule is expressed in *Goodnow* v. *Commissioners of Ramsey Co.*, 11 Minn. 31; *Johnston* v. *Becker Co.*, 27 Minn. 64. Counties have not the power to borrow money and issue commercial paper unless it is given by express legislation. *Claiborne Co.* v. *Brooks*, 111 U. S. 400.

From the order defendants appeal.

*M. R. Everett, Thos. Hessian* and *Charles C. Kolars*, for appellant.

The board has power to borrow money for the purpose of building a courthouse. 1878 G. S. ch. 8, §§ 86, 110, 111, confer that power upon it. In *Chaska Co.* v. *Carver Co.*, 6 Minn. 204, this question was decided in the affirmative. That decision was affirmed in *Nininger* v. *Carver Co.*, 10 Minn. 133, and in *Cushman* v. *Carver Co.*, 19 Minn. 295. It has also been recognized in *Auerbach* v. *Le Sueur Mill Co.*, 28 Minn. 291, and in *Sullivan* v. *Murphy*, 23 Minn. 6. Nothing antagonistic to this view appears in *Johnston* v. *Becker Co.*, 27 Minn. 64.

*W. C. Odell*, for respondent.

To meet the current expenses of Le Sueur County for the present fiscal year, a levy was made in the sum of $18,000. An additional levy for courthouse purposes was made in the sum of $3,124.80. Making the gross amount of the tax levy for the present fiscal year $21,124.80, or within $1,106.75 of the limit of tax levy prescribed by law. With this condition of things the board is about to contract for the erection of a new courthouse to cost $40,000, and to sign, issue and negotiate the interest bearing bonds of the county in that sum to raise money with which to pay the cost. The spirit of 1878 G. S., ch. 11, § 114, is to prevent boards of county commissioners

from creating any indebtedness which cannot be paid with funds then available and by the tax levy of the current year. *Niles Water Works* v. *City of Niles,* 59 Mich. 311; *Johnston* v. *Becker Co.,* 27 Minn. 64.

Boards of County Commissioners are prohibited from exercising any power other than such as is expressly given by law, or is necessary to those which are granted. 1878 G. S. ch. 8, § 114. *Borough of Henderson* v. *County of Sibley,* 28 Minn. 515.

CANTY, J. On the 20th of June, 1893, the board of county commissioners of Le Sueur county passed a resolution in which they resolved to build a new courthouse for the county at a cost of $40,000, and on February 5, 1894, applied to the board of investment of the state school fund for the loan of that sum, to be used for that purpose; and defendants allege in their answer that said board of investment granted their application.

The plaintiff, a property owner and taxpayer of the county, then brought this action to restrain the incurring of said indebtedness, and the issuing of bonds therefor, and procured a temporary writ of injunction against the board of county commissioners and county auditor. On filing their answer, defendants moved to dissolve said injunction, and upon the hearing the injunction was modified, so that the part which enjoined the issuing of bonds was allowed to stand. The injunction was also allowed to stand to the extent of enjoining the defendants from entering into any contract whereby a pecuniary liability on the part of the county shall be incurred during the year 1894 in excess of the sum of $7,355.35, which includes $3,124.80 of taxes levied by the board on the taxable property of the county in 1893, or whereby a pecuniary liability shall be incurred during the year 1894 which, with the current expenses of the county for the year, will exceed a tax levy of five mills on the dollar of the taxable property of the county, and from incurring any such liability during any subsequent year which will exceed such limit for that year. To this extent the motion was denied, and in other respects granted. From this order the defendants appeal.

It is contended by appellants that, the county being in need of a courthouse, it was the duty of the county commissioners to provide one, and that, therefore, they have the right to incur indebted-

ness for that purpose; and cite authorities which so hold on general principles. In this case the question is not governed by such general principles, but by the express words of the statute, on which this court has already passed. It is true that 1878, G. S. ch. 8, § 85, provides that "the powers of the county as a body politic and corporate can only be exercised by the board of county commissioners thereof or in pursuance of a resolution by them adopted;" and section 86 provides that "each county organized for judicial purposes shall provide at the county seat a suitable courthouse and a suitable and sufficient jail and fire proof offices and other necessary buildings and keep the same in good repair;" and sections 110 and 111 make further provisions as to providing and furnishing such offices.

But the right to incur indebtedness for such purposes, and all other general county purposes, is limited by 1878 G. S. ch. 11, §§ 49, 114. Section 49 provides: "There shall be levied annually on each dollar of taxable property in the state (other than such as by law is otherwise taxed) as assessed and entered on the tax lists for the several purposes enumerated, taxes at the rates specified as follows: * * * For county purposes, such amount as may be levied by the county commissioners, the rate of which shall not exceed five mills in any county having a taxable valuation of one million dollars or more."

Section 114 provides: "It shall be unlawful for the corporate authorities of any county * * * unless expressly authorized by law, to contract any debt, or incur any pecuniary liability, for the payment of either the principal or interest for which, during the current year or any subsequent year, it will be necessary to levy on the taxable property of such county * * * a higher rate of tax than the maximum rate prescribed by this act, and every contract made in contravention of the provisions of this act shall be utterly null and void in regard to any obligation thereby imposed on the corporation on behalf of which such contract purports to be made."

When the case of *Johnston* v. *County of Becker*, 27 Minn. 64, (6 N. W. 411,) arose, all of these statutory provisions were in force. The sections have since been numbered differently, and the language slightly changed in some instances, but, as will be seen by a reference to that case, the powers of the board of county commissioners, and the same question of restriction of those powers, were there involved as are here involved. It was there held that the board ex-

cceded its powers in attempting to incur indebtedness for the construction of a county jail. It was held that by the acts of the board the county could incur no liability exceeding the amount which could be raised by the maximum rate of taxation for county purposes in one year according to the tax lists on file when the contract was made under which the liability is incurred; and the fact that the indebtedness so incurred may not be payable that year, or before new tax lists are filed, and another year's taxes levied, makes no difference; that the board cannot anticipate the future. That case is decisive here. But there are several questions in this case which do not appear in that. There the amount of liability incurred by the one contract exceeded the amount which could be assessed as one year's taxes, and the court held the contract void. Nothing appears in the case as to other liabilities or other assets. In this case it is admitted by the answer that the ordinary current expenses of the county for the year will be about or nearly $18,000.

We are of the opinion that the board has no authority to incur liability on the part of the county which, with the ordinary current yearly expenses and other liabilities payable within the year, will exceed the amount of available funds in the treasury, and the amount which can be assessed as one year's taxes according to the tax lists on file when the contract is made under which the liability is incurred.

It also appears in this case that, besides said sum of $3,124.80, levied for courthouse purposes, there are uncollected delinquent taxes due the county amounting to $20,640; also about $7,000 of "ditch liens," and there is also a small amount in the treasury. But there is also between $6,000 and $7,000 of outstanding indebtedness,— nearly enough to absorb all the available assets except the $20,640 of uncollected delinquent taxes.

The language of said section 114 will not bear the construction that it was the intention of the legislature to permit the board to anticipate uncollected taxes in incurring liability. It must be assumed that ordinarily as much of this year's taxes will remain uncollected next year as remains of last year's taxes uncollected this year. Such a construction would give the board power to anticipate in a year more than one year's uncollected taxes assessed at the maximum rate. Besides, for all that appears in this case, the

$20,640 of uncollected taxes may be a mere residue, remaining delinquent for many years past. Such a residuum is much like the residuum of uncollected accounts on a merchant's books remaining after years of business. No board would have a right to expect that all, or even a large part of, such a residuum of uncollected taxes would be collected within a year. But we do not wish to be understood by this as holding that the board cannot contract on the faith of the $3,124.80 levied by the board for courthouse purposes in 1893, —the year previous. That question is not before us on this appeal.

It is stated in both the complaint and answer that the taxable valuation of the county is in round numbers $4,400,000, and at the rate of five mills on the dollar one year's tax would be $22,000, and after deducting $18,000,—the current year's expenses,—it would leave only about $4,200 to be applied in erecting a courthouse. From what has been stated, it is apparent that the board can contract only from year to year, with reference to the expected annual income. It also necessarily follows that the board has no authority to issue bonds. *Goodnow* v. *Board of Com'rs*, 11 Minn. 31 (Gil. 12), is still authority on this point. The statutes controlling this question are substantially the same now as then. Appellants cite *Chaska Co.* v. *Board Sup'rs Carver Co.*, 6 Minn. 204 (Gil. 130); *Nininger* v. *Commissioners of Carver Co.*, 10 Minn. 133 (Gil. 106); and *Cushman* v. *Commissioners of Carver Co.*, 19 Minn. 295 (Gil. 252),—to the effect that the board has authority to issue bonds for the erection of a courthouse. Those cases arose under the statute of 1857, by which the board was given power to erect a courthouse and jail, without any restriction whatever. In fact the restrictions in an earlier statute were stricken out by amendment.

The board has still the power to build a courthouse, but under the restriction above stated; and whether it is the best policy to be compelled to contract from year to year with reference to the expected annual income or else to accumulate a fund in the treasury before commencing or contracting for the erection of the structure, instead of incurring at once a liability which it may take years to pay, is a question for the legislature, and not for the courts.

The order appealed from should be affirmed. So ordered.

COLLINS and BUCK, JJ., absent.

(Opinion published 59 N. W. 488.)