Webster County v. Taylor.

## WEBSTER COUNTY v. TAYLOR.

1. **Practice:** EQUITABLE CAUSE: APPEAL. When the certificate of the clerk shows that he has sent to the Supreme Court all the evidence submitted on the trial of an equitable cause by the first method, while it is apparent from the recitals of the decree that the evidence is not all in the record, the Supreme Court may remand the cause for a retrial, instead of dismissing the petition.

2. **County:** EXTENT OF LIABILITY. A county is not bound by the unauthorized act of a county officer, with respect to a matter wholly beyond its corporate powers and duties.

3. —— WARRANT: DEFENSE. A county is not estopped after a warrant upon its treasury has been issued, from setting up the defense of *ultra vires*. It may also show that it was procured by fraud, or without consideration, either in whole or in part.

4. **Swamp lands:** COUNTY AGENTS. The several counties of the State may legitimately incur expenses for the selection of swamp lands within their limits, and the making of the necessary lists and proofs and depositing the same in the offices of the register of the State land office and the surveyor-general.

5. —— AGENTS AT WASHINGTON. Whether the counties possessed the power, prior to the taking effect of the act of April 8th, 1862, to make allowances for the expenses and services of agents in adjusting their swamp land claims at the proper departments of the federal government, is very doubtful; but if such an allowance could be made, the good faith of the parties should be made to appear beyond a reasonable doubt.

*Appeal from Webster District Court.*

### FRIDAY, JUNE 23.

PETITION TO CANCEL COUNTY WARRANT: POWERS AND LIABILITIES OF COUNTIES WITH RESPECT TO SWAMP LANDS,

&c.— The petition alleges, that in 1857 Webster county paid the defendant (Taylor) and two other persons $2,769.75, for selecting, returning and reporting, with the requisite maps, the swamp and overflowed land of the county.

The petition sets out the act of January 13, 1853 (Rev., § 925, *et seq.*); the act of January 23, 1853 (Rev., § 951); the act of January 27, 1858 (Rev., § 982). It is then alleged, that on the 5th day of November, 1860, the defendant fraudulently obtained a county warrant for $1,674, upon a bill of which this is a copy:

" OCTOBER 4th, 1860.

" WEBSTER COUNTY,

" *To A. Taylor,*            DR.

"To carrying abstracts of swamp lands to State
   land office and surveyor-general's office, and
   attending to them there,................... $570
To attending to abstracts at Washington city,....    630
To expenses on above trips,...................    474

Total,........................... $1,674 "

It is also averred that the *State* never appointed Taylor to attend to this business, and that " neither the county judge or the drainage commissioner had any authority to employ said Taylor to perform any of said services, and he never was so employed, and in fact, as the plaintiff believes, never performed said services."

Prayer, that the warrant may be decreed to be surrendered and canceled, as having been obtained by *fraud* and *without consideration.*

Defendant, in his answer, denies the fraud, and alleges that he did, at the request of the county, and at an expense of over $500 in money, perform the services for which the warrant in question was issued.

The record entry recites that the case was "heard upon

the petition, answer, reply, exhibits, proof, record and evidence," and the decree was in favor of the plaintiff as prayed; and it was further ordered, that unless the warrant was surrendered in ninety days, that the county have judgment for the amount thereof and interest ($1,967.49), to be enforced by execution, but with a proviso, also, that it might be discharged in county warrants or bonds issued to Small and Taylor.

Defendant appeals.

*E. W. Eastman* for the plaintiff.

*John F. Duncombe* for the defendant.

DILLON, J. — This decree must be reversed for want of evidence to sustain it. It was tried by the first method.

1. PRACTICE: equitable cause: appeal. The clerk certifies that he has sent up all the evidence; and that evidence consists simply of certain entries made by the county judge, showing that the claim, for which the warrant in suit was issued, was filed in his office, and that the county had paid the defendant and two other persons $2,769.75 for selecting swamp lands.

There is no proof in the record of the alleged fraud or the alleged want of consideration. But as the record entry recites, and the appellee claims that there was such evidence, which may have been lost, we remand the case for a retrial instead of dismissing the petition.

In doing so, as counsel differ radically in their arguments as to the powers and liabilities of the county, it is requisite that we state briefly the principles of law which we deem applicable to the controversy.

Counties are civil or political organizations, with a few defined and limited powers. They are simply govern-

2. COUNTY: extent of liability. mental auxiliaries or agencies; and their powers are much more limited than municipal corpora-

tions strictly so called, and more restricted than trading or private corporations.

The county is not bound by the unauthorized act of the county judge or other county officer with respect to a matter wholly beyond the corporate powers and duties. The written statute law is the source and charter of its power. Beyond this it cannot go. If it undertakes, through its officials, to do so, the county, the people of the county, are not bound.

Hence the county is not estopped, although the warrant is issued, from making the defense of *ultra vires*. So it 3. ―― WAR- may also show that the warrant was procured
RANT:
defense. fraudulently, or procured without consideration in whole or in part. (*Clark* v. *Des Moines, post*; *Parsons* v. *Goshen*, 11 Peck, 396 : *Hodges* v. *City of Buffalo*, 2 Denio, 110 ; *Halsted* v. *Mayor, &c.*, 3 N. Y. (3 Comst.), 430 ; 5 Barb., 218 ; *Brown* v. *Utica*, 2 Barb., 104 ; *Anthony* v. *Inhabitants of Adams*, 1 Metc., 286, per SHAW, Ch. J. ; *Vincent* v. *Inhabitants of Nantucket*, 12 Cush., 103 ; *Halliburton* v. *Inhabitants of Frankfort*, 14 Mass., 214 ; *Stetson* v. *Kempton*, 13 Id., 272.)

Applying these general principles to the case in hand, we are, upon a critical and close examination of the course 4. SWAMP of legislation, both federal and State, in connec-
LANDS:
county tion with the action, rules and requirements of
agents. the department of the interior, of the opinion that part of the services for which the claim is made, if rendered would be a legitimate county charge, and part not.
· The grant in the act of congress of September 28th, 1850, of these lands, was to the *State*. The State, by the act of the legislature of January 13, 1853, granted these lands to the several counties in which they lie, and provided for their selection by county agents. By subsequent act (acts 1853, p. 116,) the lands selected are to be reported to the secretary of State, and by him forwarded

to the surveyor-general at Dubuque. But while the State thus granted these lands to the counties, the course of legislation shows, that the State always retained legislative control over them. The counties make the selections, and the practice has been to register these selections, in the State land office at Des Moines. (See on this subject the Report of 1863, of Hon. J. A. Harvey, register of State land office, p. 47, *et seq.*)

By requirement of the department of the interior (see Lester's Land Laws, p. 543, No. 574; p. 551, No. 579; p. 552, No. 580; p. 559, No. 590; p. 563, No. 594), recognized by the State law, these selections have to be sent to the surveyor-general of the State for revision and correction. He may receive evidence, to be furnished by the State authorities, as to the overflowed character of lands selected as swamp lands, and may reject the selections, or certify them to Washington as being correct. He may require further evidence from the State authorities. (Lester, p. 559, No. 590.) The *State* has provided no officers or agents, whose duty it is to furnish such proof to the surveyor-general. Under the law by which county agents are to make the selections, and which grants these lands to the counties, we are of the opinion that they may legitimately incur expenses of this character. Instead of sending the abstracts or lists by mail or express, a county may employ an agent to bring them to the secretary of State or State land office. The duty of the register of the State land office is, however, purely ministerial, and consists simply in registering the selections made. The defendant would therefore be entitled to a fair compensation "for carrying abstracts of swamp lands to the State land office and the surveyor-general's office." What the charge means, "for attending to them there," we do not know. So far as the State land office is concerned, he could do nothing but deliver the abstracts and see that they were registered. If

Webster County v. Taylor.

he rendered services in getting selections approved at the surveyor-general's office, by furnishing further evidence and the like, we see no reason why the county, if it employed him, would not be liable therefor.

But the authorities at Washington, with respect to these lands, deal only with the *State* authorities. They do not 5.—agents recognize counties or county agents. And this at Washington. fact is recognized by acts of the legislature. The *State* appoints agents of its own (act January 27, 1858), to attend to and effect settlement of the swamp land business with the United States. And it was not until the act of April 8, 1862 (acts 1862, p. 186), which was after the services in controversy are claimed to have been rendered, that express authority was given to appoint *special agents* for counties deserving it, and this is to be done by the governor, but upon the recommendation or nomination of the board of supervisors.

The sad experience of this State has shown the necessity of confining political and municipal corporations within their prescribed limits. The public safety is intimately bound up with a strict adherence to this rule. Without now going to the extent of finally deciding, that in no possible state of the case could an allowance be made for the services and expenses of a county agent to Washington prior to the act of April 8, 1862, we are agreed that if such an allowance can be made at all, which is doubtful, the good faith of the parties, in view of the temptation and danger of the abuse of the power, if it exists, should be placed beyond reasonable suspicion. The decree below, so far as it rendered a money judgment against the defendant, was not justified by the pleadings.

Costs in this court to be paid by appellee and all other costs to abide event of suit.

Reversed and remanded.