ALLEN V. CERRO GORDO COUNTY *et al.*

1. **Corporation municipal**: COUNTY: REAL ESTATE: INCIDENTAL POW-ERS. A municipal corporation, having authority to hold and dispose of lands granted to it, possesses the incidental power, the same as an individual, to do, through its proper officers, whatever in their judgment may be necessary to preserve and perfect its interests in and title to the same.

2. —— It is accordingly *held*, where swamp lands granted by the general government to the State, and by the State to the counties in which the same were situated, that a county thus interested might, through its board of supervisors, in view of the fact that its interests and claims in respect to such lands were involved in doubt, enter into a valid contract with an individual, to the effect that, in case he succeeded through his efforts and labor in having the claims of the county established and allowed by the general government, he should be entitled to and receive, as compensation for his services, one-half of the lands, or the indemnity granted in lieu thereof.

3. —— RATIFICATION BY PEOPLE; BOARD OF SUPERVISORS. It is not necessary to the validity of such contract that it should have been submitted for ratification to a vote of the citizens of the county.

4. —— Nor that it was entered into at a *regular* session of the board of supervisors. The board can exercise its powers at a special meeting called by a majority of its members, and in the absence of a contrary showing the meeting will be presumed to have been regular.

*Appeal from Jasper District Court.*

THURSDAY, MARCH 28.

THE plaintiff filed his petition in the district court of Polk county, praying the specific performance of the contract hereinafter set out, entered into between the county of Cerro Gordo and F. C. D. McKay.

The petition alleges the performance of the contract on the part of McKay; that by reason thereof a large sum

of money, large quantities of land, and scrip for large quantities of land were secured to said county; that the plaintiff and others have become owners of undivided portions of the consideration to which McKay became entitled, and have repeatedly demanded the performance of said contract on the part of said county; that the said county refuses to perform said contract; that the lands received by said county have been conveyed to the defendant, the McGregor and Sioux City Railroad, and that said grantee received the same with notice of plaintiff's rights.

The contract referred to in plaintiff's petition is as follows: "Agreement made the 16th day of May, A. D. 1863, between the county of Cerro Gordo, in the State of Iowa, of the first part, and F. C. D. McKay, of the city of Des Moines, of the second part, witnesseth: Whereas the said county has expended large sums of money in attempts to gain title to her swamp lands, and to secure the claim of the county against the United States for such of her swamp lands as have been sold by the general government, located with warrants, and has so far been unsuccessful. And whereas, by the recent decisions and rulings of the commissioners of the general land office, the swamp land, interest and claim of said county is involved in great jeopardy, and will require expenditures in costs, expenses and efforts in order to secure it.

Now, therefore, said county hereby agrees to put its said swamp lands, interest and claim into the hands of the party of the second part for prosecution, settlement and collection, as fully as the same exists, whether for lands, scrip or cash; the county also agreeing to furnish the records, papers, etc., in its possession, to the party of the second part, to aid in said work. The county also agrees to nominate and appoint such agents as the party of the second part may desire to select, or re-select said lands, if necessary, and to make the requisite indemnity proofs, and also to nominate to the governor such person as the party of the second part may request,

for special agent, under the thirteenth section of the act of the general assembly of the State of Iowa, entitled an act to authorize the governor and board of county supervisors to appoint agents in regard to swamp lands belonging to the State of Iowa, and defining their duties; approved April 8, 1862. Such agent to give the bail by law required and deliver the proceeds to the board of supervisors, as required by said thirteenth section of said act. The party of the second part takes said interest and claim for said purposes, and agrees to prosecute the same thoroughly and with dispatch, to make such selections and proofs as may be necessary, as far as practicable; to retain such counsel and help as may be necessary to pass said claim at Washington, to close up and finish the business at the earliest practicable time, and to pay all the expenses of all such agencies, and of doing said business at Washington and elsewhere, so that said county shall have nothing to pay whatever, if nothing is obtained out of said interest or claim; and in case any lands, scrip or money, or all, are obtained, then out of such proceeds the county is to pay to the party of the second part the sum of one thousand dollars to cover such costs, expenses and efforts in full, and the remainder of the proceeds of such business is to be equally divided between the parties hereto, the county to take and have one-half thereof, and to pay and deliver the other half thereof to the party of the second part, each sharing alike in such equal division as to land, scrip and money."

To this petition the defendants, the county of Cerro Gordo, and the McGregor and Sioux City Railroad Company, filed their demurrer, as follows:

"1. Said petition does not state facts sufficient to constitute a cause of action, in this, that its claims upon a written contract, purporting to have been executed by and between one F. C. D. McKay and Cerro Gordo county; and said petition does not set forth any contract that the

county of Cerro Gordo could lawfully make or enter into; and does not show that said county is under any lawful obligation to perform said contract. Said petition shows that said contract was executed by the board of supervisors of said county for and in behalf of said county, and that the same was not made at a regular session of said board, and does not show that said board was lawfully assembled at the time of making the same, or that it was authorized to act on said subject. Said petition does not show that said contract was submitted to a vote of the citizens of said county, or that the same was ever ratified by a majority of the legal voters thereof; and no contract for a disposition of the swamps and overflowed lands of said county, or money, or scrip indemnity therefor, or indemnity lands can be disposed of or thus devoted, except by contract entered into by a vote of the people, on a question for the same, lawfully submitted at a general or special election.

"2. That said petition states facts which avoid the cause of action in this: It shows that plaintiff claims on a written contract between one F. C. D. McKay and said Cerro Gordo county, in relation to the appointment by said county of said McKay to act as agent of said county in prosecuting, in the general and State government, claims of said county for swamp and overflowed lands and scrip and money indemnity therefor, and the appropriation of said county of a part of said lands, scrip and money to said McKay, in consideration of his services as such agent.

"3. That said petition shows that said contract is one that Cerro Gordo county could not lawfully make, said county not being authorized by law to devote the swamp and overflowed lands of said county, the money and scrip as indemnity therefor, to the purposes set forth in said contract, and shows that said purposes are purposes to which said county could not devote said lands, money or scrip."

Upon application of defendants, the venue was changed to the county of Jasper.

VOL. XXXIV—8.

Subsequently the demurrer was sustained.    Plaintiff appeals.

*Withrow & Wright* for the appellant.

*J. G. Patterson, Noble, Hatch & Frese* and *D. Updegraff* for the appellee.

DAY, J.—The swamp and overflowed lands of this State were granted to the State by act of congress of September 28, 1850.   9 U. S. Stat. at Large, 519.

By the act of March 2, 1855 (10 Stat. at Large, p. 634), it was provided " that upon due proof by the authorized agent of the State or States, before the com-
missioner of the general land office, that any of the lands purchased    *    *    *    *
were swamp and overflowed lands, within the true intent and meaning of the act aforesaid, the purchase-money shall be paid over to said State or States; and when the land has been located by warrants or scrip, the said State or States shall be authorized to locate a quantity of like amount upon any of the public lands subject to entry, at one dollar and a quarter per acre or less."    *    *    *

1. CORPORA-
TION MUNICI-
PAL: county:
real estate: in-
cidental pow-
ers.

By the act of February 2, 1853 (Revision of 1860, § 925), it is provided " that all the swamp and overflowed lands granted to the State of Iowa, by the act of congress entitled 'An act to enable the State of Arkansas and other States to reclaim the swamp lands within their limits,' approved September 28, 1850, be and the same are hereby granted to the counties respectively in which the same may lie or be situated, for the purpose of constructing the necessary levees and drains, to reclaim the same; and the balance of said lands, if any there be after the same are reclaimed as aforesaid, shall be applied to the building of roads and bridges, when necessary, through or across said

lands, and if not needed for this purpose, to be expended in building roads and bridges within the county."

By the act of January 22, 1856 (Rev. 1860 § 953), the moneys due for lands sold by the United States were granted to the counties.

This being the manner in which the various counties of the State derived title to the swamp lands within their respective limits, the condition of the claim of Cerro Gordo county, at the time the contract in question was entered into, is described in the preamble to the contract itself.

The county had expended large sums of money in attempts to gain title to her swamp lands, and to secure the claim of the county on the United States for such of her swamp lands as had been sold by the general government; and by the recent decisions and rulings of the commissioners of the general land office, the swamp land, interest and claims of said county were involved in great jeopardy. Out of what particular state of facts this jeopardy arose we are not advised, but that it existed is averred in the petition, and this averment, upon demurrer, is admitted to be true. The contract further recites that it will require expenditures in costs, expenses and effort in order to secure it. This being the admitted condition of the claim of the county, had it authority to enter into the contract in question?

Section 221, Revision 1860, provides : "Each county now or hereafter organized is a body corporate for civil and political purposes only, . * * * * and may acquire and hold property and make all contracts necessary or expedient for the management, control and improvement of the same, and for the better exercise of its civil and political powers, may make any order for the disposition of its property, and may do such other acts, and exercise such other powers, as may be allowed by law." On the 28th day of May, 1861, the general assembly

passed an act placing the swamp lands in the several counties under the control of the boards of supervisors in the counties respectively. Acts Extra Session, 8th General Assembly, ch. 8.

"The board of supervisors at any lawful meeting shall have the following powers, to wit:     *     *     *     * To make such orders concerning the corporate property of the county as they may deem expedient.     *     * *     * To represent their respective counties, and to have the care and management of the property and business of the county in all cases where no other provision shall be made." Revision 1860, § 312, subdivisions 3 and 11. These provisions seem to confer upon the county ample authority over this property. But if the power were not thus in direct terms conferred, it would seem that it must be necessarily implied from the power to hold the property.

The power to make all contracts necessary to the protection and perfection of the title to property must be incident to the power to acquire and hold it. It would be an anomaly in the law to allow an individual to acquire property and deny him the means of preserving or protecting it. And the rule would be equally anomalous when applied to a corporation. ·

The language of the supreme court of Ohio, in *Reynolds* v. *The Commissioners of Stark County*, 5 Ohio, 204, is applicable to the present inquiry. In that case the defendants held the legal title to property conveyed to them for the site of public buildings. The predecessors in office of the defendants leased a portion of the premises for ninety-nine years, renewable forever. The defendants, denying the power to make the lease, upon the ground that it was equivalent to a conveyance of the fee, refused to perform the contract.

In a suit for specific performance, the court said: "A corporation is an artificial person, and by the terms of its

creation it possesses the same capacity to purchase that an individual has who possesses the power to contract. This doctrine has been long settled, and repeatedly recognized from a very early period to the present time. Co. Litt. 44, 300, 306 ; Sidafire, 162 ; *Smith* v. *Branett*, Com. Dig., title Franchise; *Colchester* v. *Lowton*, Ves. & Beames, 226 ; *Le Clergh* v. *Gallipolis*, 7 Ohio, 220. Indeed, so necessarily incidental is this power, that it has been holden (10 Rep. 1), that a corporation cannot be created, possessing the power of holding, without the power of disposing; and that a clause in the charter restricting the alienation of their property, without the consent of the chancellor, is void. The statutes restraining ecclesiastical and eleemosynary corporations are all the limitations imposed by the laws of England upon the power to sell. Admitting that civil corporations incidentally possess the power to transfer a good title by deed, it may still be insisted that a person taking the estate holds it subject to the same trusts as while in the hands of the corporation. Perhaps such a trust may sometimes be raised by the terms of the donation. If the land be made subject to uses expressed on the face of the deed, which cannot be enjoyed consistently with the exclusive dominion and enjoyment of the alienee, perhaps the trust might be enforced. As where lands were given to a municipal corporation, to be holden for a common, walk, or a public fountain, perhaps the purchaser may take it subject to the rights of the inhabitants. But the cause before cited from Veasey & Beames shows that when property held for general corporate purposes is aliened, even for purposes not corporate, such alienation is absolute.

It may be said that by this construction of their powers the officers of corporations "are invested with too large an authority over corporation property, and may waste it, or place it beyond the reach of the members without remedy. We cannot avoid this result. We can relieve in case of

fraud, and where a specific trust is raised we can enforce it; but the security against improvidence or bad management must be looked for in the interests, wisdom and justice of the official agents, and in the relations they sustain to those who conferred the authority."

In the *Town of Petersburg* v. *Mappin et al.*, 14 Ill. 195, the plaintiff released a judgment recovered against the defendant, upon the payment of costs. Upon a bill in chancery afterward filed to set aside the release as being without consideration, the court said : " The trustees of the town possess only such powers as are specifically conferred by the act of incorporation, or are necessary to carry into effect the powers expressly granted. They must keep within the limits prescribed by the charter. If they transcend the authority conferred thereby, their acts are not binding on the town or third persons. They have no power to give away the funds of the town, or appropriate them to purposes not warranted by the charter. They must faithfully apply the corporate property to the uses and objects specified in the charter. As they cannot directly dispose of it by way of gratuity, so they cannot accomplish the same result by device or indiscretion. They cannot, under color of a sale, transfer the property of the corporation without consideration ; nor can they, under pretense of satisfaction, discharge a debt due the corporation without payment. But they may sue and be sued, and take all steps necessary to assert and secure the rights of the corporation. The power to prosecute suits on behalf of the corporation includes the power to settle the same. So the power to defend suits brought against the corporation gives them the same power of adjustment. They may compromise doubtful controversies to which the corporation is a party, either as plaintiff or defendant. The law vests in them a discretion in such matters which they are to exercise for the best interests of the corporation. A settlement of

an existing controversy, if made in good faith, binds the corporation; but if collusively made, it is not obligatory."

It is claimed, however, that the act of January 27, 1858 (Rev., § 982), and the act of 1862, chapter 160, direct the mode in which the swamp-land claims of the respective counties shall be prosecuted, and that the proscribing of this method forbids resort to any other. It is urged "that if an affirmative statute directs a thing to be done in a certain manner, that thing shall not, even though there are no negative words, be done in any other manner."

It is to be observed, however, that the thing, authorized and directed by these statutes, is essentially different from the thing contemplated in this contract. Section 982 of the Revision authorizes the governor to appoint an agent to proceed to Washington to effect an adjustment and settlement for the different counties in the State, of their swamp-land business. Chapter 160 of the act of 1862 also provides for the appointment of such agent, and authorizes the board of supervisors to nominate to the governor a suitable person, or special agent, to settle said claim, whom the governor is required, upon such nomination, to appoint. The compensation of these agents is fixed at four dollars per day, for the services rendered and expenses incurred. Up to the 16th of May, 1863, the efforts of these agents had proved unavailing in the adjustment of the claim of Cerro Gordo county. The county had expended large sums of money and been unsuccessful. By recent decisions of the commissioners of the general land office the claim of the county was involved in great jeopardy. The securing of the claim required expenditures in costs, expenses and effort. These agents could not advance much by way of expenditure, for their compensation and expenses were limited to four dollars a day. Something must be done to secure a vigorous prosecution of the claim, or it might be lost entirely. The county turns to the expe-

dient of making the contract sued on. McKay agrees to make such selections and proofs as may be necessary, to prosecute the claim thoroughly and with dispatch, and as far as practicable. To retain such counsel and help as may be necessary to press said claim at Washington, to close up and finish the business at the earliest practicable time, and to pay all the expenses of all such agencies, and of doing said business at Washington and elsewhere, so that said county shall have nothing to pay whatever if nothing is obtained out of said interest and claim.

So far do the duties of McKay, under his contract, differ from the duties of the agents referred to in the statutes noticed, that, in addition to his other undertakings, he agrees to pay those very agents, thus agreeing to discharge all their duties and more. But the position of appellee proves .too much. The sections which provide for the appointment of agents also limit their expenses and compensation. If the powers of the counties are bounded by these sections, they can make no appropriation of means beyond the amount therein prescribed, in aid of the prosecution of their claims. Thus they have granted to them lands the title to which is in dispute, and are denied the use of effective means for rendering that title complete.

The case of *Webster County* v. *Taylor*, 19 Iowa, 117, cited by appellee, decides nothing at variance with these views.

It is further urged that the board of supervisors had no authority to agree to give McKay a portion of the lands, scrip or money recovered as compensation for his services. In support of this proposition, appellee cites *Baker* v. *Washington County*, 26 Iowa, 148. In that case Baker sought to recover the reasonable value of services rendered, with respect to the swamp lands of said county. In determining his claim, the court said:

"On the other hand, however, for the home work, such as hunting up witnesses, taking testimony, establishing, by

proper proofs, the swampy character of the lands, we think the board could employ any one deemed competent, and provide for his compensation. The law does not contemplate that these proofs are necessary to be taken or prepared by a State agent alone. His duties are rather to make settlements with the commissioner at Washington, it being left to the counties to collect and forward the proper proofs, and as it would be competent to employ and compensate a notary, or any other officer authorized to administer oaths for such services, or for taking testimony. So the proper county authorities could contract with any one to do all this work and provide for his compensation, not by giving him a portion of the lands or scrip, but such per diem or otherwise, as might be agreed upon. In the absence of agreement, he would be entitled to pay for what his services would be reasonably worth. The law nowhere fixes the compensation of persons thus employed. The provisions of sections 11 and 12 of the act, as to per diem, relate to agents appointed by the State or by the supervisors, to receive the money due the county from the State treasury."

The right of Baker to be compensated out of the lands and scrip recovered was not involved in the case, and what is there said in respect to such right can be regarded only in the sense of *dicta*. The legislation in respect to the swamp lands clearly evinces an intention that all the expenses incurred with reference thereto shall be paid from the fund itself.

The act of 1851 (Rev., § 921) provides: "All compensation for services rendered, or expenses incurred, in carrying out the provisions of this act must be out of the proceeds of the sales of said swamp lands." See, also, §§ 945, 982 and 984 of the Revision.

Under these provisions it is clear that the entire policy of the State is that the swamp-land fund shall pay all the neces-

sary expenses incurred with regard to it. No other policy would be just or reasonable. If McKay should be paid under this contract from the general funds of the county, we have no doubt that the amount paid would properly be made a charge upon the swamp-land fund. We can, therefore, see no valid objection to his receiving in the first instance for his proper compensation a portion of the lands and scrip recovered.

It is further claimed that the contract is void, because it transfers to McKay the discretion vested in the board to nominate a suitable person to the governor, for appointment as special agent of the county.

Whatever might be said of this stipulation, if this suit were one to enforce a specific performance of its conditions, it appears plain to us that it cannot now be urged as any valid objection to the agreement.

That portion of the contract is no longer executory. If such special agent was nominated to the governor upon the suggestion of McKay, the county has too long acquiesced in the act to object now.

If no special agent was appointed, the county cannot now object that the right to suggest one was transferred to McKay. In either event the stipulation is now quite immaterial.

The remaining grounds of demurrer require but brief notice. It is not necessary that the petition should show 3. RATIFICA- that the contract was made at a regular session TION BY PEO- of the board of supervisors. The board may PLE: board of supervisors. exercise its powers at a lawful meeting. Rev., § 312. Special meetings may be called upon request of a majority of the board. Rev., § 309. In the absence of a showing to the contrary the meeting will be presumed to be lawful.

In our opinion it is not necessary that the contract should be submitted for ratification to a vote of the citizens of the county. The contract is not one for the sale of swamp

lands to which the county had acquired title. It is simply for the acquisition of title to lands in dispute.

A remaining objection is urged in the argument as follows: "The action is for an unliquidated claim against the county, and the petition contains no allegation that the claim has been presented to the board of supervisors, and payment thereof demanded."

It is conceded that this objection is not raised in the demurrer, but it is claimed it may be considered under the Revision, section 2877.

If this demurrer were a general one, this position of appellee would be tenable. But, as he has undertaken to specifically point out the grounds of his objection to the petition, we think he should be confined on the argument, to the objections enumerated.

It follows, from what we have said, that in our opinion the board of supervisors had power to enter into the contract sued upon. That is the only question presented for our determination, and the only one upon which we express any opinion.

All other questions must be left for consideration at the trial.

Reversed.