SCHOOL DIST. (CHAPMAN v.). See Cases Nos. 2,607 and 2,608.

## Case No. 12,478.
SCHOOL DISTRICT TP. v. LOMBARD.
[2 Dill. 493.] 1

Circuit Court, D. Iowa. 1873.

MUNICIPAL CORPORATIONS — SCHOOL WARRANTS — FRAUDULENT JUDGMENT THEREON SET ASIDE ON TERMS.

1. The holders of municipal warrants, though they gave value therefor, are subject to all defences which would have been available had the action been by the payee or party to whom they were originally issued.
[Cited in Shirk v. Pulaski Co., Case No. 12,-794.]
[Cited in Board of Sup'rs v. Catlett's Ex'rs (Va.) 9 S. E. 1001.]

1 [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

2. In this respect, such warrants are different from authorized negotiable bonds or securities issued by public or municipal corporations.
[Cited in Shirk v. Pulaski Co., Case No. 12,-794.]

3. A judgment rendered in favor of the holder of school district warrants which were fraudulently issued, and where the school officers connived at the rendition of such judgment, was, upon a bill in equity filed for that purpose, set aside; but the court directed an inquiry to be made by a master as to the consideration actually received by the district for the warrants, and subsequently rendered a decree against the district for the amount in value of such consideration.

This is a bill in equity to set aside a judgment heretofore obtained in this court against the complainant, the district township of Newton, in Carroll county by the defendant [James Lombard], on account of the fraud of the officers of the township in issuing the warrants, and suffering judgment to be rendered thereon. Knowledge of these frauds is charged upon the agent of the defendant, who purchased the warrants and procured the judgment. Testimony was taken, and the cause heretofore submitted to Mr. Justice Miller, who found that the allegations of the bill were true, and ordered a decree to the effect that the complainant was entitled to have the judgment set aside because of the frauds of the township officers in issuing the warrants and in conniving at the recovery of the judgment thereon; but as to each warrant embraced in the said judgment he directed an inquiry to be made, whether it was fraudulent, and what consideration was actually received therefor by the district. The master has made that inquiry, and reports that of the warrants in the defendant's judgment, $3,286.41 "were fraudulently issued, and for which no consideration whatever has been received by the complainant;" that certain others of said warrants were fraudulently issued, but the complainant has received a partial consideration therefor, to-wit: $407.65, and that $1,600 of the said warrants were not shown to be either fraudulent or without consideration. The defendant excepts to the report of the master, and it is on these exceptions that the cause is now before the court.

Hubbard & Cook, for complainant.
Grant & Smith, for defendant.

Before DILLON, Circuit Judge, and LOVE, District Judge.

DILLON, Circuit Judge. The defendant obtained judgment by default against the complainant on the 20th day of October, 1869, for $7,882.28. This judgment was rendered upon what is known as school district warrants, mostly issued in the years 1868 and 1869. The complainant township is situate in one of the newer counties of the state; and as late as 1870 there were in this township, between the ages of five and twenty-one, only one hundred and sixty-six children. The evidence shows that this district township was out of debt, or nearly so, in 1867, but that in 1868 school

officers were elected who systematically set to work to issue to themselves and their confederates and friends school warrants without any consideration, or but a nominal or colorable consideration. It is shown, during these two years, that warrants were issued by these officers to an amount exceeding $30,000, on account of the erection and purchase of school houses, while the actual value of the school houses on account of which these warrants were issued did not reach $2,000. Indeed it is plain, upon the evidence, that during those years the officers only made use of their power to erect and furnish school houses for the fraudulent purpose of obtaining a pretext for the issue of warrants.

A few examples will show the character of the transactions. For school house No. 1, worth about $1,000, warrants for $5,000 were issued; school house No. 2, worth about $500, cost in warrants $2,540; for the two school houses in sub-district No. 3, worth $500, there were issued warrants for over $18,000; for school house No. 4, worth $400, there were $1,200 of warrants issued. School house No. 5 was professedly let to the president to be built by contract for $2,000. He bought, or pretended to buy, a dwelling house of one Atterbury, actually worth $500 to $800, and turned it over to the district for $1,750 in warrants, Atterbury continuing to occupy it, and the school being kept in the garret. The district never obtained title to the house or the ground on which it stands. On account of this house there were warrants issued to the amount of $2,983. To one Elwood were issued $1,483 in warrants for fencing, trees, etc., for school house No. 1; the actual value of the fence which he built was $40, and the trees $5. Other examples may be stated: $600 of warrants were issued to Gilley for a fence which he never built; $600 were issued to another man for building a fence worth only $40, and $215 of warrants were issued for banking up school houses, the actual service rendered being worth not to exceed $5; and many warrants were issued for alleged services which were never rendered. These frauds were known to the community, but until 1870 those interested in perpetrating them outnumbered the few honest citizens, who felt themselves unable to resist or prevent their commission. The records of this court show that frauds of a similar character have been practiced for years in many of the new counties in the northwestern portion of the state, and it seems strange that the legislature of the state, or its officers, have been so tardy or remiss in suppressing them.

It is settled law that warrants of this character have not the quality of negotiable paper, which prevents an inquiry into its fraudulent character or its consideration when in the hands of innocent holders for value before due. Clark v. Des Moines. 19 Iowa, 199; Clark v. Polk Co., Id. 248; Shepherd v. District Tp., 22 Iowa, 595; Taylor v. District Tp., 25 Iowa, 447. In this respect such warrants are unlike authorized negotiable bonds issued by public or municipal corporations. The holders of these warrants are in no better situation than the payee, and are open to all defences which might have been made against the party to whom they were originally issued. Shepherd v. District Tp., supra.

In this case it was shown that the agent of the defendant, who purchased for him these warrants for fifty cents on the dollar, or thereabouts, knew, or had good reason to know, that they were fraudulent, or without consideration, and that the school officers connived at the rendition of judgment upon them. Accordingly Mr. Justice Miller was of opinion that the district township was entitled to have the judgment set aside and the warrants upon which it was based canceled, except so far as it might appear that some of the warrants were valid, and a consideration therefor was actually received by the district.

On the many exceptions which have been made to the master's report I have examined all the evidence, and find his report sufficiently favorable to the defendant except in one respect. The master rejected the $1,100 of warrants in the defendant's judgment, issued to one Bowers, for building a school house which he never erected. But the only evidence taken on this subject does not establish any fraud nor any default on the part of Bowers. If Bowers did not have title to the lot on which the building was to have been erected (which is the material question), the complainant ought to have more satisfactorily shown it.

The master's action in rejecting the $600 of warrants issued to Hampton in part payment for the Atterbury school house in No. 5 is excepted to; but, both by reason of fraud and want of consideration, these warrants are not binding upon the district. The whole scheme for the purchase of this dwelling house originated in fraud, and warrants issued in pursuance of this scheme, to the fraudulent officer and contractor, cannot be enforced in a court of justice. If the district had title to the property, or were actually in possession of it, there might arise an equity on the part of the innocent holders of these fraudulent warrants to compel the district to pay to the extent of consideration actually received. But such is not the case. On the contrary, the record presents a case of fraud wholly novel in its character and which well illustrates the mode of discharging public trusts there practised. The evidence shows that after the sale Atterbury occupied the house, and it tends to show that the only school kept was one in the garret; that Atterbury's daughter was the teacher, and his children the only scholars.

The exceptions to the report of the master are overruled, and his report confirmed except as to the above $1,100, and a decree will be entered to the effect that there are justly due to the defendant, on account of the warrants in suit, the aforesaid sums reported by the master, viz.: $407.65 and $1,600, and the said $1,100—making in all, $3,107.65; and that the

same be enforced by execution, and, if necessary, by mandamus, in the usual manner; each party to pay his own costs in this suit.

Decree accordingly.

## SCHOONER.

[Note. Cases cited under this title will be found arranged in alphabetical order under the names of the vessels; e. g. "The Schooner Jacob E. Ridgway. See Jacob E. Ridgway."]