## Wytheville.

### BOARD OF SUPERVISORS v. CATLETT'S EX'ORS.

#### June 13th, 1889.

1. APPELLATE COURTS—*Jurisdiction—Franchise.*—A suit as to right of board of supervisors to levy a tax to pay a claim, concerns a franchise, and this court hath jurisdiction. Code 1887, § 3455.
2. IDEM—*Judgment—Merits.*—Where case is presented here on same record of pleadings and exhibits as was presented in the court below, this court can adjudge the case on its merits, though no exceptions were taken to the action of the court below.
3. BOARD OF SUPERVISORS—*Executive—Defence.*—The powers and duties of such board are executive, not judicial; and its allowance of a claim is not an adjudication, and does not bar its contesting the claim's validity, and pleading the statute of limitations, when a *mandamus* is applied for to compel payment.
4. COUNTY COURT—*Mandamus—Case at bar.*—Claim of agent appointed by county court in 1863, for an agreed compensation, was presented and allowed in 1871, but not paid, and in 1873 was disallowed. In 1887, a *mandamus* was applied for to compel its payment. HELD: The claim was barred by the lapse of five years between its accrual and the filing of the application.

Heard at Richmond.    Decided at Wytheville.

Error to judgment of circuit court of Gloucester county affirming a judgment of the county court of said county awarding, on an application by the executors of John W. C. Catlett, a writ of *mandamus* to compel the board of supervisors of said county to pay a claim of their testator against said county.

On the 6th of January, 1863, an order was entered by the county court of Gloucester county, appointing John W. C.

Catlett an agent for the said county to receive from the agents of the state the salt to which the county was entitled under the act of the general assembly, passed May 9, 1862 (Acts 1861–62, miscel., p. 13), the validity of which was affirmed by this court in *Dinwiddie county* v. *Stuart, Buchanan & Co.*, 28 Gratt., 526. By the same order it was also directed that the bonds of the county be issued to the amount of five thousand dollars and delivered to the said Catlett, who was directed to borrow money upon them, and out of the moneys to be so raised, to pay for the salt and all necessary expenses, and to retain in his hands a commission of five per centum upon the amount received by him on account of the bonds, as well as the money which he might receive from sales of the salt to the citizens of the county, in full compensation for his services as agent as aforesaid.

On the 4th of November, 1863, the county court entered another order, pursuant to the act of the general assembly, passed March 30, 1863, appointing the said Catlett an agent for the county to purchase from the superintendent of the salt works the quota of salt to which the county was entitled under that act, and to make distribution thereof among the citizens of the county. The order also directed additional bonds of the county to be issued and delivered to the said Catlett, upon which to raise money to pay for the salt and the necessary expenses attending the performance of his duties under the order, and further directed him to retain in his hands the sum of one thousand dollars in full compensation for his services. The order also contained a provision in these words: "And it is ordered that in making distribution of the said salt, the agent shall not allow distribution to any person known to be *disloyal to the Confederate government.*" And substantially the same provision is contained in two subsequent orders of the court—one entered on the 19th of May, 1864, and the other on the 6th of February, 1865—directing distribution of salt

among *the loyal* citizens of the county at certain mentioned prices.

On the 14th of December, 1871, the said Catlett presented an account to the board of supervisors of Gloucester for one thousand dollars in Confederate money for services rendered by him as agent as aforesaid, which was scaled by the board, and its equivalent in currency ascertained to be $157 29, and, as scaled, the account was, on the same day, allowed, with interest from the 15th of June, 1863. No steps, however, were taken for the payment of the claim, and on the 26th of May, 1873, an order was entered by the board disallowing it, and directing the clerk "to strike the same from the list of accounts audited against the county," &c. From this order no appeal was taken. It appears, however, that on the 4th of June, 1881, the said Catlett moved the board to issue a warrant in his favor on the order of the 14th of December, 1871, allowing the account; which motion, after being fully argued by counsel, was unanimously refused by the board.

On the 4th of August, 1887, (the said Catlett having in the meantime died,) the claim was again presented to the board by his executors, and was allowed. This action, however, was on the same day rescinded, and the matter deferred for consideration at the next meeting of the board, when, "after due consideration, the board unanimously refused to make a levy to pay the said claim."

The executors thereupon applied, by petition to the county court of the said county for a *mandamus* to compel the board of supervisors to make a levy for the payment of the claim; to which petition the board appeared by counsel, and filed its answer, setting up a number of defenses to the claim.

One of these defenses was that the board had not authority to make the order of the 14th of December, 1871, allowing the claim, and that it has no power or authority to make a levy to pay the same, because it is for services rendered in aid

of rebellion, and is therefore void, and its payment prohibited
by the constitutions both of the state and of the United States.
Another was that the orders of the county court, under which
the services in question were rendered, provide on their face
for the compensation to be paid the said Catlett, which he
agreed to accept in full compensation for his services, and that
his estate is, therefore, not entitled to recover anything against
the county on account of the said services.    And the statute of
limitations was also pleaded.

The executors demurred to the answer, and also replied,
averring that the board "is estopped from saying, as it does,
that it had no power to make the order of the 14th of December, 1871."

When the case came on to be finally heard, the county court
awarded a peremptory *mandamus*, as prayed in the petition,
which action was afterwards affirmed by the circuit court of
the said county; whereupon a writ of error was awarded by
one of the judges of this court.

*W. B. Taliaferro* and *McCandlish & Taylor*, for plaintiffs in
error.

*James & Jackson*, for defendants in error.

LEWIS, P., after stating the case, delivered the opinion of the
court.

The defendants in error have moved to dismiss the writ of
error as improvidently awarded, because, they say, the amount
involved is less than $500, and therefore that the case is not
within the jurisdiction of this court.    It is true the amount
involved is less than $500, but inasmuch as there is drawn in
question a franchise—*i. e.*, the right of the board, as the representatives of the county, to levy a tax to pay the claim in question—the court has jurisdiction of the case, and of the whole

case.    Const., Art. VI., sec. 2; Code, sec. 3455; 4 Min. Inst., 857.

The further objection that the case cannot be considered on its merits, because no exceptions were taken to the action of the county court awarding a *mandamus*, is also without merit. The case was presented to the county court upon the pleadings and the exhibits therewith filed, and as it was presented there the record presents it here, the exhibits being, in effect, a part of the pleadings.    *Wright* v. *Smith*, 81 Va., 777.

As to the merits, the principal point made by the defendants in error is, that the allowance of the claim by the board on the 14th of December, 1871, was in its nature and effect *an adjudication* of the merits of the claim, which it was not competent for the board, at a subsequent meeting, to reverse or ignore. But we do not concur in this view.    The powers and duties of a board of supervisors in Virginia are not judicial in their character, but are wholly executive or administrative. If it allows a claim not properly and legally chargeable on the county, or which it has not authority to allow, it exceeds its power, and its act is not binding on the county.    Its allowance of a claim has no more effect than a settlement between individuals, and a warrant to pay a claim which has been allowed is nothing more than an order upon the county itself, the debtor.    That the allowance of a claim by a board of supervisors does not partake of the nature of a judgment which will estop the county, has been decided in many states and in numerous cases.

In a recent case in the supreme court of North Carolina, it was held that an allowance of a claim by a county board of commissioners is not final and conclusive, and may be re-examined by the board itself, and that it was error to instruct the jury that the allowance of a claim by the board was an adjudication as binding as the judgment of a court.    *Abernathy* v. *Phifer*, 84 N. C., 711.

So in *Gurnee* v. *Brunswick county*, 1 Hughes, 270, Chief Jus-

tice Waite, in considering the nature of the powers exercised by a board of supervisors, under the laws of this state, in passing upon claims against the county, said: " The board are the representatives of the people elected to supervise the business of the county, which has been by law committed to their care. They constitute a branch of the executive department, not of the judiciary. * * When an account is presented to them, it is for allowance, not for adjudication. In settling and allowing they do not act judicially. * * Their duties are purely administrative."

To the same effect is the opinion of Judge Dillon in *Shirk* v. *Pulaski County*, 4 Dill., 209, who cited the following authorities in support of his ruling that the allowance of a claim by a board of supervisors is not an adjudication, which will estop the county from setting up a defence to the claim when subsequently sued upon it, viz : *Webster County* v. *Taylor*, 19 Iowa, 117; *Clark* v. *Des Moines*, *Id.*, 199; *Clark* v. *Polk County*, *Id.*, 248; *School District* v. *Lombard*, 2 Dill., 493; *Keller* v. *Leavenworth County*, 6 Kan., 510; *Goodnow* v. *Ramsey County*, 11 Minn., 31; 1 Dill. Mun. Corp., sec. 412; *The Mayor of Nashville* v. *Ray*, 19 Wall., 468. See, also, High, Extr. Rem., sec. 354.

We have no doubt, therefore, that where, as in the present case, a board of supervisors is sought to be compelled by *mandamus* to make provision for the payment of a claim previously allowed, it is competent for the defendants, in answer to the application for the writ, to set up the invalidity of the claim originally, or to plead the statute of limitations, or both.

Nor does *mandamus* lie to compel a board of supervisors to levy a tax for the payment of a claim which it has no authority to pay, even though the claim may have passed into judgment. In such a case there is no estoppel by the judgment, and *a fortiori* there is none where the claim is of a class, payment of which, is prohibited by law. The writ lies to compel that to be done which it is the defendant's duty to do without it,

but it confers no new authority.    Hence the party proceeded against, must have the power to perform the act, otherwise the writ will be denied.    *Brownsville* v. *Loague*, 129 U. S., 493.

In the present case, while the exact period during which the services were rendered for which claim is made, does not appear, the fair inference from the record is that at least a part of the service was rendered under the appointment of the 4th of November, 1863, and subsequent orders of the county court, directing distribution of salt to be made among those citizens only who were loyal to the Confederate government.    It is unnecessary, however, to decide the constitutional question raised in this connection by the respondents, because the claim is barred by the statute of limitations, and that is decisive of the case.    A proceeding like the present, is in the nature of an action to recover money founded upon a contract not under seal, and, therefore, as the petition for the writ was not filed within five years after the date of the order of the board first allowing the claim, in December, 1871, the statute applies. The order of the 4th of August, 1887, which was rescinded the same day, does not affect the case.    The allowance of the claim, so far as the question before us is concerned, had no more force and effect, as already said, than an ordinary settlement between individuals.    It was not an adjudication; it was merely the recognition of the liability of the county upon a contract to pay money not under seal, and as to which the doctrine of *res judicata* has no application.

The judgment of the circuit court must, therefore, be reversed, and this court proceeding to render such judgment as the said circuit court ought to have rendered, the order of the county court, awarding the writ, will also be reversed and annulled, and the petition dismissed.

JUDGMENT REVERSED.