IRVINE v. BOARD OF COM'RS OF KEARNEY COUNTY, KAN.

(Circuit Court, D. Kansas, First Division. August 1, 1896.)

No. 412.

SUBROGATION—INVALID MUNICIPAL BONDS.

Where county bonds issued in exchange for county warrants are declared void because issued, in violation of law, within a year after the organization of the county, one who purchased such bonds is entitled to be subrogated to the rights of the holders of the warrants for which the bonds were issued.

Suit by Louise M. Irvine against the board of county commissioners of the county of Kearney, in the state of Kansas, to recover county warrants, or their value, alleged to have been exchanged for county bonds.

Rossington, Smith & Dallas, for complainant.
Peters & Nicholson, for defendant.

FOSTER, District Judge. The bill alleges: That Kearney county was organized April 3, 1888. That it became necessary for the transaction of the county business that books, records, and other supplies should be purchased by the commissioners, and also offices to be occupied by the county officers. That the commissioners, acting within their lawful powers, in April, 1888, examined and allowed certain accounts and expenses in and about said business, and caused county warrants or orders to be issued therefor. That each of said orders was duly signed by the chairman of the board, and attested by the clerk of the county, numbered, and stating the purpose for which it was issued, payable to the payee or bearer. That on October 2, 1888, George W. Crane & Co. were the holders and owners of the following numbered warrants issued for supplies to said county, to wit: No. 2, $500; No. 3, $500; No. 4, $500; No. 5, $500; No. 6, $500; No. 8, $500; No. 84, $500.40; No. 139, $275; No. 231, $1,360; No. 232, $741; No. 239, $100; No. 264, $21; No. 327, $500; No. 23, $24; No. 524, $16.12. All of which warrants had been presented for payment, and payment refused for want of funds, and that said warrants from that time bore legal interest. That, in addition to the foregoing warrants, there were others outstanding, to parties unknown, in the amount of

$4,500. That on the 1st day of October, 1888, said county of Kearney undertook to refund said bonds under the provisions of chapter 50, Laws 1879 (1 Gen. St. par. 464), and for the purpose of carrying out said object the commissioners of said county, at a meeting in October, 1888, caused to be entered upon the record of its proceedings the following resolution:

"Resolved, that the matured and maturing indebtedness of Kearney county, as evidenced by warrants of the county, said indebtedness now costing the county at the rate of 7% per annum, be, and the same is hereby, ordered to be refunded into 6% bonds, under the provisions of chapter 50, Laws of 1879, to compromise and re-fund the said indebtedness. The chairman of the board of county commissioners and the county clerk are hereby instructed to execute refunding bonds, and deliver the same to any person upon the surrender of equal amounts of proper evidence of said indebtedness so refunded, for cancellation. The county treasurer shall cause the surrendered evidence of indebtedness to be marked 'Paid in full,' across its face. The county clerk shall accompany each such bond or bonds with his certificate, under seal, that the indebtedness of Kearney county in registered warrants equal to the sum of such bond or bonds has been surrendered to the board of county commissioners for cancellation, and canceled. Such bonds shall be in denominations of one thousand, five hundred, and one hundred (1000, 500, and 100) dollars, each bearing the date of October first, A. D. 1888, interest payable semiannually at Kansas Fiscal Agency, New York, and shall not exceed the actual amount of outstanding county warrants at the date of such bonds, nor exceed the sum of forty thousand dollars. They shall bear date October 1, 1888, maturing thirty years from date, and be payable, principal and interest, at New York."

That in pursuance of such resolution, and said law of 1879, said defendant did issue on October 1, 1888, bonds amounting in the aggregate to $11,500, payable 30 years after date to bearer, in exchange for the foregoing warrants, said bonds being numbered, respectively, from 36 to 49, both inclusive, of the denomination of $1,000; bonds numbered 54, 55, 56, and 60 being each of the denomination of $500; and bonds numbered 64, 67, 69, and 70 being each of the denomination of $100; said bonds bearing interest at the rate of 6 per cent. per annum, payable semiannually, for which interest coupons were attached. That in consideration of the delivery of said bonds the holders and owners of said warrants surrendered and delivered the same to the county. That immediately after the issuance of said bonds they were placed upon the market, and sold and delivered to bona fide purchasers in the usual course of business, and that said bonds and coupons became the property of this complainant, she having paid the face value thereof. The bill alleges further: That, in an action brought in this court upon said bonds, the same were held to be illegal and void, which decision was sustained by the circuit court of appeals of this circuit. Coffin v. Commissioners, 6 C. C. A. 288, 57 Fed. 137. That in consideration of the premises said warrants were delivered up and surrendered to the county, and canceled, without any consideration whatever passing from the said county to the owners and holders of the same, and that by reason of the purchase of said bonds by this complainant she became entitled in equity to be subrogated to all the rights, both in law and in equity, of the original holders and owners of said warrants against the county. To this bill the defendant files a general demurrer.

The law under which these bonds were issued reads as follows:

"That every county, every city of the first, second or third class, the board of education of any city, every township and every school district, is hereby authorized and empowered to compromise and refund its matured and maturing indebtedness of every kind and description whatsoever, upon such terms as can be agreed upon, and to issue new bonds, with semi-annual interest coupons attached, in payment for any sums so compromised; which bonds shall be issued at not less than par, shall not be for a longer period than thirty years, shall not exceed in amount the actual amount of outstanding indebtedness, and shall not draw a greater interest than six per cent. per annum." 1 Gen. St. par. 464.

The law concerning the organization of new counties (1 Gen. St. par. 1577) contains this proviso:

"Provided, that no bonds except for the erection and furnishings of school houses shall be voted for, and issued by any county or township, within one year after the organization of such new county under the provisions of this act."

The bonds in this case were issued in six months after the county was organized, and for that reason the circuit court of appeals of this circuit has held said bonds to be illegal. Coffin v. Commissioners, 6 C. C. A. 288, 57 Fed. 137. The complainant claims the right of equitable subrogation to all the rights of the holders of the original warrants against the county. There can be but little controversy as to the right of the original holders of these warrants, exchanged for these worthless bonds, to have redress against the county. Louisiana v. Wood, 102 U. S. 294. Under the rules of equity, has that right passed to the holder of these bonds? The doctrine of subrogation in equity has received the attention of the courts in a multitude of cases, and in all phases, except, perhaps, the rights of purchasers of negotiable paper and municipal bonds. From this multitude of cases, and the text-books, the rule is settled to be this: Where a person, who is in no manner bound or obliged, morally or otherwise, and on his own motion, in the absence of a contract or expectation that he will be substituted in the place of the creditor, pays the debt of another, he will be regarded as an intermeddler, and not entitled to subrogation. Query: Can a party be considered an intermeddler who buys negotiable paper on the market in the usual course of business? For a full compilation of the authorities on this subject, see editorial notes to Crumlish v. Improvement Co. (W. Va.) 23 Lawy. Rep. Ann. 125–127 (18 S. E. 456); Trust Co. v. Peters (Miss.) 30 Lawy. Rep. Ann. 830, 831 (18 South. 497). Also Campbell v. Association, 163 Pa. St. 609, 30 Atl. 222; Webster's Appeal, 86 Pa. St. 409; Insurance Co. v. Middleport, 124 U. S. 534, 8 Sup. Ct. 625; Acer v. Hotchkiss, 97 N. Y. 395; Gans v. Thieme, 93 N. Y. 232; Pease v. Egan, 131 N. Y. 262, 30 N. E. 102. So far as my research has extended, I find no case analogous to this, with the exception of Insurance Co. v. Middleport, supra, and on that case this defendant chiefly rests its defense. Per contra, the case of Louisiana v. Wood, 102 U. S. 294, is important. A careful study of these two cases will show the close distinction made by the supreme court between the denial of a right to recover on the grounds of equitable subrogation, stated

in the Middleport Case, and the right to recover for money paid into the city treasury, for which there was a failure of consideration by issuing of illegal bonds, as in the Louisiana Case. In both cases, municipal bonds had been issued, and held to be illegal and void. In the first case, they were issued to a railroad company on a subscription to aid the construction of its road, and put upon the market and sold. The court held that the complainant could not be subrogated to the rights of the railroad company to enforce the payment of the subscription against the township. In the Louisiana Case, the bonds were antedated to evade the requirements of the law requiring registration by the state auditor, and for that reason were held illegal. The purchaser bought them of the agent of the city, and the money went into the treasury. The court says:

"It would certainly be wrong to permit the city to repudiate the bonds, and keep the money borrowed on their credit."

This case did not turn on the right of subrogation, but in the case of Parkersburg v. Brown, 106 U. S. 500, 1 Sup. Ct. 455, the court, speaking of the equitable interests of the vendors of the bonds in a trust fund passing to the purchaser, uses the following language:

"The O'Briens having indorsed and sold the bonds, the holders of the bonds succeeded to such rights of the O'Briens as are incident to the ownership of the bonds."

This doctrine was approved in Chapman v. Douglas Co., 107 U. S. 360, 2 Sup. Ct. 62; Bank v. Townsend, 139 U. S. 74, 75, 78, 11 Sup. Ct. 496; Everston v. Bank, 33 Kan. 352, 6 Pac. 605; Shirk v. Pulaski Co., 4 Dill. 209, Fed. Cas. No. 12,794; School Dist. Tp. v. Lombard, 2 Dill. 493, Fed. Cas. No. 12,478; Green's Brice's Ultra Vires, p. 623; Pom. Eq. Jur. § 1300. In Anthony v. Jasper Co., 101 U. S. 697, the court, speaking of the rights of the purchaser of illegal bonds, uses the following language:

"Other circumstances may exist which would give the holder of them an equitable right to recover from the municipality the money which they represent, but he cannot enforce the payment, or put them on the market as commercial paper."

What are the circumstances which might exist, giving the holders of illegal municipal bonds equitable rights to recover from the municipality? They could not be well claimed to exist where the municipality attempted to create a liability entirely unwarranted by the law, as in the case of Association v. Topeka, 20 Wall. 656, where bonds were issued to aid a private enterprise, nor perhaps in any case where there was an entire want of power to create the debt against the municipality; but where the debt had a legal existence, and the money or the proceeds of the bonds went into the treasury of the municipality, and the bonds were only illegal by reason of the manner, mode, or time of executing them, it seems to me it presents a case for equitable relief and recovery. Indeed, if it were not for some inferences of Mr. Justice Miller in his opinion in the Middleport Case, which, however, can be well distinguished from this case, I should unhesitatingly say this should be the rule; and, were it not for the remarks of the learned justice in that case, I should doubt,

after a careful consideration of the law of subrogation, and the authorities on that question, whether a purchaser of commercial paper in the open market could be classed as an intermeddler in the contracts of other parties, within the meaning of the decisions on that subject. In the cases where that rule had been long established, the interference by the third party was without any warrant or excuse in law or equity. In the case at bar, so far as the rights of Crane & Co., the original holders of the county warrants, surrendered for these bonds, are concerned, if the law failed to furnish them a remedy to recover for the supplies furnished the county, then equity would come to their relief, and charge the county commissioners with a constructive trust of their property, the warrants surrendered, for their use and benefit. That equity, in my opinion, is an incident which passed to the holders of these bonds. Perry, Trusts, § 184, lays down this rule:

"If a party, in ignorance and mistake of his rights and interests, execute a conveyance, although no fraud is practiced upon him, a court of equity will relieve against the instrument; for it is against good conscience to take advantage of one's ignorance to obtain his property. * * * And if the purchaser should have full knowledge, or, should stand in any confidential relation, or should practice the slightest art to mislead or conceal, the equities would, of course, be much stronger against the transaction; but these circumstances are not necessary, to avoid the conveyance, for relief will be granted where both parties are in a mutual state of ignorance, or are laboring under the same mistake."

It is evident, from the records of the county before referred to, the surrender of the warrants by the creditor, and the issuing of the bonds, that both parties intended to exchange one valid evidence of indebtedness for another, better suited to the wants of both parties. The county warrants were lawful, and the debt for which they were issued was created for necessary supplies and expenses in and about the business of the county. There is no reason, in good conscience, why Kearney county should be permitted to take advantage of its illegal act, to evade payment of a debt for which it had received full benefit, and the evidences of which had been surrendered by mistake of the facts and the legal rights of the parties. The demurrer must be overruled.